## Hanover Railroad Company *versus* Coyle.

1. One who approached a railroad at a point in a town where he had often crossed muffled in his coat within the covered top of his wagon, taking no notice of the railroad, and drove slowly upon the track without stopping or looking out, was guilty of negligence.

2. In an action against a railroad for injuring the plaintiff by negligence, the court below admitted declarations of the engineer, by whose negligence the plaintiff was injured, made at the time of the injury, as part of the *res gestæ*. *Held*, not to be error.

3. The plaintiff was a peddler; evidence of the annual amount of his sales and the profit he made, tended to show the amount he might have earned, if he had been able to attend to his business, and was admissible.

May 21st 1867. Before WOODWARD, C. J., THOMPSON and AGNEW, JJ. Absent, STRONG and READ, JJ.

Error to the Court of Common Pleas of *York county*.

This was an action on the case brought August 10th 1864, by William J. Coyle against the Hanover Branch Railroad Company for negligence by the servants of the company in running against and breaking his wagon, injuring himself and his horses, and injuring and destroying goods in his wagon.

The plaintiffs were a company incorporated to build a railroad from the Northern Central Railway to the town of Hanover, a distance of about 12 miles. After they had completed their road, the Gettysburg Railroad Company constructed a road from Hanover to Gettysburg, a distance of about 17 miles. On the 26th of March, 1863, an agreement was entered into between these two roads by which the Gettysburg road, then in the hands of a sequestrator, agreed ·to keep their roads, bridges, sidings, switches, water stations, turn-tables, engine house, &c., in good order; to furnish the necessary sidings, switches, water stations, and turn-tables; to pay all labor and expenses attending the repair department of their road; to employ and pay their agents along the line of their road, whose duty·it shall be to sell tickets, receive and deliver freights, and to do all matters pertaining to transportation at the several stations; to furnish the records, books, manifests, tickets, &c., for their stations, and to collect all transportation charges at their stations; said company to take proper and sufficient care of all switches, &c., along the line of the road. To permit the burden cars of the Hanover Branch Railroad Company to run and carry freight over their road, and to pay for the use of the said cars.

The Hanover Branch Railroad Company to furnish the motive power, passenger and baggage cars sufficient for the transportation of all the passengers and baggage: and to carry all the freight over the road from the different stations and points of business, to employ conductors, brakesmen and baggage-masters, and to

[Hanover Railroad Co. *v.* Coyle.]

pay all expenses attending the running of trains along their own road, to ticket passengers, receive and deliver all freights, for and from all points on the Gettysburg Railroad, and to collect the revenues therefrom at all the stations on the Hanover Branch Railroad, and for such purpose to furnish the records, books, manifests, tickets, &c., for said points, exclusive of the station at Hanover.

For the said services the Gettysburg Railroad Company is to pay the Hanover Branch Railroad, $475 per month, &c., * * * and if said Gettysburg Railroad Company neglects or refuses to pay promptly, as herein stipulated, then this contract can be declared null and void by the said Hanover Branch Railroad Company. * * *

The Gettysburg Railroad Company shall be responsible for all accidents or casualties occurring in consequence of the defective construction, bad repair, or improper condition or situation of their road or parts thereof, bridges, culverts, sidings, switches, &c., &c., and should obstructions be placed on the track at any time, by malicious or designing persons, and the Hanover Branch Railroad Company sustain damage in consequence thereof, said damages shall be paid in equal proportions by the contracting parties.

The Hanover Branch Railroad Company shall be responsible for any accident or casualty, caused by the want of repair or improper condition of any of their machinery or cars, or the negligence of their agents or operatives in running the road of the Gettysburg Railroad. Company according to these stipulations.

There was no schedule of running time on the Hanover Company's trains, being governed by the running of the trains on the Northern Central Railroad.

On the trial before Fisher, P. J., the evidence was that on the 6th of January 1864, the plaintiff, who was a peddler, was driving on the Carlisle road in a wagon with two horses, " so muffled up with his coat, comfort and buffalo robe" that the witness supposed he could not see the signal which he, the witness, made to him with his hand. The plaintiff was then about 5 yards from the railroad at the point where it crosses the Carlisle road, and the train was about 100 yards distant, the plaintiff's horses moving in a fast walk, and in crossing the railroad, which was the Gettysburg Railroad, the cow-catcher struck the wagon, greatly injured himself and one of his horses, and scattered and injured his goods. There was evidence given by plaintiff's witnesses that there were openings by.streets and alleys in the town, by one of which the plaintiff could have seen the train when it started and for some distance afterwards, and by the others only at the time of crossing it,—the sight at one being intercepted by " Hohler's" house.

[Hanover Railroad Co. *v.* Coyle.]

The plaintiff's witnesses also proved that the wagon hid the head and the sides of the plaintiff, but not his legs.

There was evidence also of the plaintiff having frequently crossed the railroad at that place.

The evidence was conflicting as to giving signals, and as to the train being behind time.

On the trial the plaintiff offered to prove declarations of the engineer at the time of the accident, for the purpose of showing that the train was behind time, to show carelessness and negligence, and as part of the *res gestæ.*

He also offered to prove the nature and character of his business, and the extent of the loss of time, and also percentage on the goods sold by him in his usual course of business, the loss of interest of money received for the same, in consequence of injuries received, and the annual amount of sales made by him—for the purpose of showing his damages in consequence of being prevented by the defendants from transacting his business.

Both offers were received against the objection of the defendant, and exceptions were taken.

The defendants submitted points; those whose answers were assigned for error, with the answers, are as follows:—

4. It was the duty of Coyle, the plaintiff, in driving up to the crossing, to use all reasonable care and opportunity to find out whether a train of cars was also approaching it at the same time. It would have been proper for him to have stopped his wagon at the first point from which he might have had a view of the railroad, as stated in the testimony, on both sides within a few hundred feet of the crossing; to have listened to hear the whistle or noise of the engine or cars, and to look to see if an engine or train was coming; if he neither heard nor saw anything to indicate the approach of either, it was proper that he should not have ceased his efforts, but should have continued them at each of the points of view of the railroad mentioned in the testimony as nearer to the crossing; and if the jury believe that he neglected to take all or any of these precautions, but drove carelessly on to the crossing without stopping—paying no attention to any warnings which may have been given him, until his wagon was struck by the engine, and this conduct on his part helped in any degree to occasion the accident, their verdict must be for the defendant.

Answer: " We answer this point in the affirmative. But in so doing, we do not affirm the facts stated to be proved; whether they are or are not is for the jury to decide from the evidence. It is their duty to decide from the whole evidence all the facts, which are many and are disputed. Negligence is a fact to be decided by the jury from the whole evidence, and all the circumstances attending the case. Negligence is the want of that care which

[Hanover Railroad Co. v. Coyle.]

men of common sense and common prudence ordinarily exercise in their employments and business of life."

6. If the plaintiff could sustain any action at all, it would be against the Gettysburg Railroad Company, on which the collision occurred, and not against the Hanover Branch Railroad Company, the defendants.

Answer: "The court cannot answer this point in the affirmative. We say if plaintiff is entitled to recover for the injury complained of, he can recover against the defendants in this action."

7. If the Gettysburg Railroad Co. was, at the time of the collision, under the management of themselves, or their trustee, or their sequestrator, they or he receiving all the profits of passengers and freight, while hiring by the month or otherwise, their motive power from the Hanover Branch Railroad Company, and their freight cars from the Northern Central Railroad, if there be any liability for the alleged collision, the Gettysburg Railroad Company, and not the Hanover Branch Railroad Company, are responsible for it; and, therefore, the plaintiff cannot recover in this suit.

Answer: "If the facts stated in this point are sustained by the evidence, taken in connection with the article of agreement between the Gettysburg Railroad and the Hanover Branch Railroad, they cannot prevent the recovery of the plaintiff if he is otherwise entitled to recover."

8. Upon the evidence in the cause the plaintiff is not entitled to recover.

Answer: "We cannot answer this point in the affirmative. The evidence is for the jury, and they must decide what the facts are, and what credence is to be given to the witnesses."

The verdict was for the plaintiff for $1524. The defendants moved for a new trial; the motion was overruled and judgment entered on the verdict.

The defendants took a writ of error, and, besides the answers to the points, assigned for error the rulings of the court on the evidence.

*J. S. Mayer*, for plaintiffs in error.—The answer of the court to the 4th point could only serve to set off the supposed negligence of the defendants against negligence of the plaintiff, and mislead and confuse the jury: Wilds v. Hudson River Railroad Co., 24 New York 443; North Penna. Railroad Co. v. Heileman, 13 Wright 60; Stevens v. the Oswego & Syr. Railroad Co., 18 N. Y. 422; Brooks v. Buffalo and Niag. F. Railroad Co., 25 Barb. 604; O'Brien v. Phila. and Wil. Railroad Co., in Sup. Ct. Penn., 6 Am. Law Reg. 361; Spencer v. U. & Sch. Railroad Co. 5 Barb. 337; Penna. Railroad Co. v. Ogier, 11 Casey 60; Catawissa Railroad Co. v. Armstrong, 13 Wright 192; Cotton v. Wood,

[Hanover Railroad Co. *v.* Coyle.]

8 C. B. N. S. (98 E. C. L. R.) 573; Toomey *v.* The London, &c., Railway Co., 3 C. B. N. S. (91 E. C. L. R.); Deyo *v.* New York Cen. Railroad Co., 34 N. Y. (7 Tiffany) 13; Johnson *v.* Hudson R. R., 20 N. Y. R. 73.

A party injured by a collision, asks only what road it was, and who were operating it, in order to know whom to sue. Does it make any difference that they hired the engine and cars, and the employees on them, from the Hanover Branch Company. The motive power was under their exclusive control of the Gettysburg Company and the sequestrator, and they were made custodians of a public highway, with the perception of the accruing profits: Acts of Feb. 19th 1849, § 18, Pamph. L. 86; April 22, 1850, § 9, Pamph. L. 539; June 16th, 1836, § 74, Pamph. L. 775, Purd. 840 pl. 20, 845, pl. 46, 200 pl. 46; Pierce on Amer. Rl. Rd. Law; 244 Graham *v.* N. E. R. W. Co., 114 E. C. L. R. 239; Laugher *v.* Pointer, 5 B. & C. 558 (11 E. C. L. R. 584); Story on Agency, § 313, 2 Kent's Com. 260; Rauch *v.* Lloyd, 7 Casey 365.

The declarations of the engineer were not a part of the principal fact—the collision—not a part of the *res gestæ*: Dick *v.* Cooper, 12 Harris 221; Patton *v.* Minesinger, 1 Casey 393; Lund *v.* Tyngsborough, 9 Cush. 36; Lane *v.* Bryant, 9 Gray 247; Griffith *v.* Montgomery Railroad Co., 26 Yerg. 111; Thallheimer *v.* Brinkerhoof, 4 Wend. 398; Vanderbilt *v.* Richmond Turnpike, 2 Comstock 479; McManus *v.* Cricket, 1 East 106; 2 Hilliard on Torts 432; Frazier *v.* Penn. Railroad Co., 2 Wright 104; Hoffman *v.* Kemerer, 8 Id. 452; Steinman *v.* M'Williams, 6 Barr 176.

The plaintiff should not have been permitted to recover damages for the profits he might have made on his sales of his goods, if he had not been interrupted by the collision: The Amiable Nancy, 3 Wheat. 546, 560, and cases there cited; per Cowen, J., Blanchard *v.* Ely, 21 Wend. 342; Smith *v.* Condry, 1 Howard 28; Giles *v.* O'Toole, 4 Barb. 261; 2 Greanleaf Ev. § 256; Heil *v.* Glanding, 6 Wright 499; Fleming *v.* Beck, 12 Id. 312; Sedgwick on Dam. 78; 1 Chitty Pleading 441, &c.; Squier *v.* Gould, 14 Wend. 159; Vanderslice *v.* Newton, 4 Comst. 130.

*D. J. Williams* and *J. Gibson*, for defendant in error, cited Makey *v.* Pennsylvania Railroad, 6 Am. Law R. N. S. 415; North Penna. Railroad *v.* Heileman, 13 Wright 60; Pennsylvania Railroad *v.* Ogier, 11 Casey 60; O'Brien *v.* Philadelphia, &c., Railroad, 6 Am. Law R. 361; Phila. & Trenton Railroad *v.* Hagan, 11 Wright 248; Painter *v.* the Mayor of Pittsburg, 10 Id. 220; Broome's Legal Maxims 387; 2 Hilliard on Torts 446, pl. 11; Cincinnati *v.* Stone, 5 Ohio 38; Quarman *v.* Burnett, 6 M. & W. 499; Milligan *v.* Wedge, 12 Ad. & El. 737; Rapson *v.* Cubitt, 9 M. & W. 710; Reedie & Hobbit *v.* London & Northwestern Railway, 4 Exch. 244–254; Overton *v.* Freeman, 11 C.

[Hanover Railroad Co. v. Coyle.]

B. 867 ; Peachy v. Rowland, 13 C. B. 182 ; Hilliard v. Richardson, 3 Gray 349 ; Blake v. Ferris, 1 Seld. 48 ; Pack v. The Mayor, &c., of New York, 4 Seld. 222 ; Blattenberger v. The Little Schuylkill Navigation Company, 2 Miles 309 ; Laugher v. Pointer, 5 B. & C. 547 ; Brucker v. Fremont, 6 T. R. 659 ; Powell v. Deveny, 3 Cush. 304, 305 ; Crockett v. Calvert, 8 Ind. 127 ; Act of the 19th of February 1849, § 13, *supra ;* Act of 13th March 1847, § 1, Purd. 844, pl. 38, Pamph. L. 337 ; Rauch v. Lloyd & Hill, 7 Casey 365 ; Lane v. Bryant, 9 Gray 245 ; Reagan v. Grim's Administrator, 1 Harris 508 ; Potts v. Everhart, 2 Casey 493 ; Lincoln v. Saratoga & Sch. Railway, 23 Wend. 425 ; Fleming v. Beck, 12 Wright 309 ; Wade v. Haycock, 1 Casey 382 ; Heil v. Glanding, 6 Wright 499 ; Adams's Express Co. v. Egbert, 12 Casey 360 ; McKnight v. Radcliffe, 8 Wright 156 ; Redfield on Railways 347 ; Rogers v. Fales, 5 Barr 154 ; Railroad Co. v. Messino, 1 Smead. (Tenn.) 220 ; 18 U. S. Dig. 301, pl. 387.

*J. L. Mayer*, in reply, cited Haring v. N. Y. & Erie Railroad Co., 13 Barb. 15 ; 2 Hilliard on Torts 445, 447 ; 1 Greenl. Ev. § 13 ; Thalheimer v. Brinkerhoff, 4 Wend. 396 ; Bank of Munroe v. Field, 2 Hill 445 ; Story on Agency, §§ 135, 136 ; Farlie v. Hastings, 10 Ves. 128 ; Barker v. Benninger, 4 Kern. 271 ; Luby v. Hudson River Railroad Co., 17 N. Y. R. 133.

The opinion of the court was delivered, July 3d 1867, by

AGNEW, J.—Upon a careful examination of the testimony in this case, it is impossible to shut our eyes to the fact that the jury were permitted to find a verdict for the plaintiff, contrary to the evidence and the instruction of the learned judge.   But the remedy was by granting a new trial, and not a writ of error. Whatever may have been the negligence of the railroad company (and it is a question upon the evidence whether there was any), it seems to be very clear that Coyle the plaintiff approached the crossing of the railroad muffled up, sitting within the covered top of his wagon, taking no notice of the railroad, which he well knew, for he had often crossed it before, and drove slowly upon the track, without stopping or looking out, so far as anything in the evidence discloses the fact to us.   It also shows that at this point a traveller passing in the direction Coyle was going cannot see up and down the track, in consequence of the position of Kohler's house, until he has gotten within sixteen feet of the track.   It is very manifest, therefore, that Coyle was guilty of negligence in omitting to stop and look out for the cars.

But the court answered the first five points of the defendant, all bearing on the negligence of Coyle, in the affirmative, giving to the jury the proper instructions, which under the evidence ought to have led to a verdict for the defendants.   The error was not

5 P. F. SMITH—26

that of the court, but of the jury, which ought to have been corrected by setting aside the verdict. This, however, admits of no remedy here.

The defendants complain, however, that the court qualified the answer to the 4th point in such manner as to mislead the jury. We cannot perceive any error. The judge did not qualify the instruction, but merely submitted the facts upon which the instruction rested. It is true that he also added that negligence is a fact to be decided by a jury from the whole evidence and all the circumstances, and is the want of that care which men of common sense and common prudence ordinarily exercise in their employment and business of life. But this in no wise qualified the instruction already given; especially that part of the answer to the 4th point which affirmed that if the jury believed Coyle neglected to take all or any of these precautions, but drove carelessly on to the crossing without stopping, paying no attention to any warnings which may have been given him until his wagon was struck by the engine; and this conduct on his part helped in any degree to occasion the accident, their verdict must be for the defendant.

The paper-book discovers no bill of exceptions to the testimony referred to in the 5th assignment of error. But if it did, we cannot say that the declaration of the engineer was no part of the *res gestæ.* It was made at the time of the accident, in view of goods strewn along the road by the breaking up of the boxes; and seems to have grown directly out of, and immediately after, the happening of the fact. The negligence complained of being that of the engineer himself, we cannot say that his declarations, made upon the spot, at the time, and in view of the effects of his conduct, are not evidence against the company as a part of the very transaction itself.

The same remarks apply to the evidence contained in the 6th error.

That portion of the evidence admitted as stated in the 7th error, to wit, the annual amount of Coyle's sales, and the profit he made thereupon, bore directly upon the question of damages, as affording a means of computing his loss for the time he was confined by his injuries and prevented from carrying on his business. It tended to show the amount he might have earned by his employment, if he had been able to attend to it.

The action was properly brought against the defendants. The train was theirs, and the engineer their servant, and they were the carriers. The division or appropriation of the profits could furnish no criterion of liability in such a case, especially where, as here, by the very terms of the agreement between the two companies, the defendants were to suffer the loss which should be incurred by such an accident.

Finding no error in the record, the judgment is affirmed.