# Noah W. Shafer *v.* Lacock, Hawthorn & Co., Appellants.

*Negligence—Evidence—Declarations.*

Declarations made by workmen while a fire was in progress to the effect that it was caused by their carelessness, are admissible in evidence in an action by the owner of the property destroyed against the employer of the workmen to recover damages for the loss occasioned by the fire.

*Negligence—Presumption of negligence from circumstances.*

Where the thing which causes the injury is shown to be under the management of the defendants, and the accident is such as in the ordinary course of things does not happen when those who have the management use

| | |
|---|---|
| 168 | 497 |
| 183 | 31 |
| 168 | 497 |
| 190 | 353 |
| 168 | 497 |
| 201 | 257 |
| 168 | 497 |
| 20 SC | 628 |
| 168 | 497 |
| 21 SC | 467 |
| 168 | 497 |
| 24 SC | 382 |
| 24 SC | 482 |
| 168 | 497 |
| 28 SC | 535 |
| 168 | 497 |
| 213 | 372 |
| 168 | 497 |
| 36 SC | 583 |
| 168 | 497 |
| f223 | 172 |
| 38SC | 233 |

proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care, and the burden is upon the defendants of establishing their freedom from fault.

Defendants were employed by plaintiff to repair a roof. They sent two men to do the work, who took a fire pot upon the roof. A fire was caused by sparks from the fire pot, and plaintiff's property was destroyed. *Held*, that the circumstances raised a presumption of negligence against defendants.

Argued Oct. 29, 1894. Appeal, No. 157, Oct. T., 1894, by defendants, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1893, No. 120, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass to recover damages for loss of property alleged to have been destroyed by the negligence of defendants' workmen. Before White, J.

At the trial it appeared that defendants were engaged in the tin roofing business. Plaintiff employed them to repair the roof of his house. Defendants sent two workmen to do the work who took with them upon the roof of the house a fire pot. Sparks escaped from the fire pot, and set the house on fire. The entire building was destroyed, together with a large part of the furniture and some valuable trees.

Plaintiff testified:

" A. Then as soon as I got into the gate one of the tinners came to me and he said "—

Objected to as hearsay. Objection overruled. Counsel for defendants except, and bill sealed. [1]

" A. He said, I owe you an apology for burning your house down, and then he said to me,—told me how it occurred. He said, I was working up on the roof and I had exposed it, a spark got into the sheathing, and I thought I had put it out, and when I came back I found that the fire had such a start that we couldn't control it. What I said to him I don't mind.

Rose Shelton was asked this question:

" Q. What did they say ? "

Objected to as incompetent. Objection overruled. Counsel for defendants except, and bill sealed. [2]

" A. Why, Mary Shafer asked them whether they were hunting for something; they were talking to themselves, and she

asked them what it was about, and they said a spark had caught and they wanted some water."

Charles F. Swift was asked this question:

" Q. Did you hear any conversation between the tinner and other persons, or yourself, that day, and if so, when did you hear it ? "

Objected to as incompetent and hearsay. Objection overruled. Counsel for defendants except, and bill sealed. [3]

" A. After the fire got well under headway, so far that nothing more could be done to carry articles from the house, the wind shifted to the south, I think, and the cinders came in a northwesterly direction, falling on many of the articles that had been removed from the house. They were lying in the upper part of the yard, and a number of us commenced carrying a number of those articles across the road in Mr. Collenbaugh's yard, and during the time of carrying of these articles the conversation between the group of persons who were there and the tinner occurred there."

" Q. Well, now, just state what the conversation was."

Objected to as incompetent and hearsay. Objection overruled. Counsel for defendants except and bill sealed.

" A. As we were standing there he pointed at an opening at the foot of the window casing or mullin—I don't know just exactly what you call it; it was resting on the window stool outside, a hole large enough to enter my fist through; he said that his pot was sitting out on the roof, and that sparks from that pot drew around the mansard and the corner of the casing into that hole, and he discovered it was on fire, and he said he extinguished it, as he supposed, spit in it, rubbed it with his hand, put it out, and I can't say positively whether he said he put it out as far as he could see or not."

" Q. He gave that as the way the fire occurred ? A. That was the only theory he could give at that time. Q. Did he say when that occurred ? A. During the time that he was on the roof, mending a hole in the roof near the window, open from the roof—what time of day, do you mean ? Q. Yes. A. I can't say as he did; I don't remember as he said just what time of day it was."

Milton Kerns was asked this question:

" Q. Did Mr. Reese tell you that he expected to be discharged

or bounced on Saturday for the burning of Mr. Shafer's house, and that it had caught from a spark from his charcoal stove ? A. Yes, sir."

· Objected to as incompetent. Objection overruled. Defendant's counsel except and bill sealed. [4]

Defendants' points were among others as follows :

" 4. If the jury believe that the workman sent by defendants to do the work upon plaintiff's house was a competent and careful workman, and that the fire pot furnished to him by defendants and used by him was a safe and proper appliance, then the defendants were not guilty of the want of reasonable and ordinary care, and their verdict should be for the defendants. *Answer :* Refused. [5]

" 5. Under all the evidence the verdict should be for the defendants. *Answer :* Refused." [6]

The court charged in part as follows :

" [Now, the contention of the defendant is that the fire did not originate from sparks from this fire pot, and he has suggested this theory to account for the fire—and mainly on that contention they differ—that the fire burst out at the side of the dormer window. Now, I allow the testimony to be given of what the young man said at the time the building was burned as a part of the res gestæ. He admitted to Mr. Shafer that the fire, according to Mr. Shafer's testimony, originated from a spark from his fire pot, and that he tried to put it out and failed. The colored girl, and also Mary, heard him admit that the fire caught from a spark. A man down in the yard while the house was burning said he explained where it caught; pointed up ; caught from a spark. Then the next day he admitted, according to the testimony of those two witnesses (who were called to contradict him), that the fire caught from a spark. To one of them he expressed the fear that he would be dismissed from the employment of the defendants for burning the house, and to the other one admitted that it caught from a spark, and that he thought he had extinguished it, and when he returned found it had got beyond control. Now, the young man, when first called as a witness, explaining what he said to Mr. Shafer, differs materially from what Mr. Shafer says he said. He said that he told Mr. Shafer he owed an explanation, and that he told him he thought the house caught from a spark.

But his testimony here is that it did not catch from a spark. He has so testified, or rather explained his declaration to Mr. Shafer at that time, because he then supposed it caught from a spark. Now, as I say, gentlemen, the first question is, how did that fire take place? If it took place from a spark or sparks from the fire pot he was using, then the next question would be, was it negligence? Was it because of his negligence in handling it, or doing something which he ought not to have done, or not being as careful as he ought to have been? The fair presumption is, if it caught from sparks, that it was negligence. That is the fair presumption. He denies here that it caught from sparks, and denies that he said so to these others. Now, I say if you find from the evidence that the fire originated from the sparks, the fair presumption would be that it was through some negligence of his. The plaintiff cannot explain the exact circumstances of the case, but the young man knows all about it. If it was not through negligence, that is, if this spark set fire to the house without negligence on his part, he could explain it, because if it was purely accidental, without any negligence on his part, there would be no responsibility on him or his employer. By way of illustrating it, what I mean, gentlemen, I will say this: If he was handling the fire box very carefully, as he ought to have been doing, upon a roof where there would be danger from sparks, and if, with that care and caution that he ought to have exercised, there was a sudden puff of wind that sent sparks into the house, he would not be responsible; there would not be negligence there. He denies that the fire took place from sparks, and you have the declarations of the various witnesses. If you find that the fire did occur from sparks, the fair presumption would be that he was in some way negligent, as he only could explain how it occurred, and why he was not guilty of negligence, if it occurred from sparks.] " [7]

Verdict and judgment for plaintiff for $17,018. Defendants appealed.

*Errors assigned* were (1–4) rulings on evidence, quoting the bill of exceptions; (5–7) above instructions, quoting them.

*J. S. Ferguson, James S. Young* and *Lewis McMullen* with him, for appellants, cited on the question of evidence: 21 Am.

& Eng. Ency. of Law, 106; Russell v. Hudson River R. R., 17 N. Y. 137; Williamson v. Cambridge R. R., 144 Mass. 148; Lane v. Bryant, 75 Mass. 245; Lund v. Tyngsborough, 9 Cushing, 36; Story on Agency, sec. 134; Packet Co. v. Clough, 87 U. S. 540; Vicksburg R. R. v. O'Brien, 119 U. S. 99.

On the question of negligence: Buckley v. Gutta Percha Co., 113 N. Y. 540; Allison Mfg. Co. v. McCormick, 118 Pa. 519; McCully v. Clark & Thaw, 40 Pa. 399; Baker.v. Fehr, 97 Pa. 72.

*J. M. Garrison, John S. Robb* with him, for appellee, cited on the question of evidence: 1 Rice on Evidence, 376; Lund v. Tyngsborough, 9 Cushing, 41; Hanover R. R. v. Coyle, 55 Pa. 396; Pa. R. R. v. Lyons, 129 Pa. 113; Tompkins v. Saltmarsh, 14 S. & R. 275; Elkins v. McKean, 79 Pa. 493; Mesert v. Perry, 36 Miss. 261; Leahey v. Cass Ave. R. R., 97 Mo. 165; O. R. R. v. Porter, 92 Ill. 437; Toledo R. R. v. Goddard, 25 Ind. 185; Greenleaf on Evidence, secs. 258, 259, 261, 262; 1 Rice on Evidence, 376; 21 Am. & Eng. Ency. of Law, 106.

On the question of negligence, 16 Am. & Eng. Ency. of Law, 448; Scott v. London, etc., 3 Hurl. & Colt., 596; Rose v. Stephens & Condit Trans. Co., 20 Blatchf. 411; Mulcairns v. Janesville, 67 Wis. 24; White v. Boston R. R., 144 Mass. 404; Dougherty v. Missouri R. R., 81 Mo. 325; Bedford etc. R. R. v. Rainbolt, 99 Ind. 551; Cummings v. National Furnace Co., 60 Wis. 603; Seybolt v. New York etc. R. R., 95 N. Y. 562; Lowery v. Manhattan R. R., 99 N. Y. 158; Douglass v. Mitchell, 35 Pa. 443.

OPINION BY MR. JUSTICE McCOLLUM, May 30, 1895:

If the destruction of the plaintiff's property was the direct result of the negligence of the defendants' servants in the performance of the work their employers had undertaken to do for him this judgment must stand, unless it plainly appears that the court below erred in its rulings on offers of evidence or in its instructions to the jury. It is contended in support of the appeal that the declarations of the workmen, made while the fire was in progress, to the effect that it was caused by their carelessness, were not admissible to charge their employers with liability for the consequences of it. We think this contention is

sufficiently answered by the decisions of this court in Hanover Railroad Co. v. Coyle, 55 Pa. 396; Tompkins v. Saltmarsh, 14 S. & R. 275; Elkins v. McKean, 79 Pa. 493, and Penna. Railroad Co. v. Lyons, 129 Pa. 113. We accordingly overrule the first, second, and third specifications of error. As the evidence complained of in the fourth specification was received in rebuttal, and manifestly for the purpose of contradicting the defendants' principal witness in a material matter, it was clearly relevant and its admission afforded no ground for reversing the judgment. The proposition that if the defendants furnished a proper fire pot and competent and careful workmen they are not responsible to the plaintiff for the loss he sustained through the negligence of their servants is not applicable to the case. The relation between the parties is not that of master and servant and the duties which the former owes to the latter need no consideration in the decision of the questions involved in this issue. For these reasons the fourth and fifth specifications are overruled.

There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred, and this we think is one of them. The defendants by their servants were in possession of the roof of the plaintiff's house and engaged in repairing it. For the purposes of their work they had a fire pot there, and it is established by the verdict that the fire which destroyed his property was caused by a spark or sparks from it. The workmen, while the fire was in progress, acknowledged that it was so caused, but on the trial they set up in the interest of their employers, a theory respecting the origin of it which was discredited by their previous declarations, and other testimony, and was rejected by the jury. It was a theory born long after the fire and opposed to their observation at the time of it. It was speculative and conjectural and it was justly condemned. The defendants by their servants were in exclusive possession of the roof, and the destruction of the property was due to fire brought there by them, and under their control. The occurrence was not in the ordinary course of things, and the circumstances connected with and surrounding it put on them the duty of showing that it was at least consistent with the exercise of proper care in the performance of their work. If it was capa-

ble of an explanation which repelled an inference that it resulted from their negligence, they could and ought to have made it because they were in a position to do so, while from the nature of the case it was not in the power of the plaintiff to show expressly in what manner their work was performed or the cause of the escape from the fire pot of the sparks by means of which his house was burned. In Sherman and Redfield on Negligence, secs. 59 and 60, the rule applicable to the case is thus stated: " The accident, the injury and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence and thus cast on the defendant the burden of establishing his freedom from fault. When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants that the accident arose from a want of care." See also on this point Thompson on Negligence, 1227–1235, Cooley on Torts, 706, and 16 Am. & Eng. Ency. of Law, 448, and cases there cited. In the light of the evidence and the principles applicable to it we cannot convict the learned court below of error in the instructions. We therefore overrule the sixth and seventh specifications.

Judgment affirmed.