William Kepple, W. S. Kepple and A. D. Kepple *v.* The Pennsylvania Torpedo Company, Limited, Appellant.

*Negligence—" Shooting " oil well—Contractor's responsibility—Question for jury.*

The case turning on whether a contractor employed to " shoot " an oil well performed his task with due care or skill, or whether he carelessly and negligently left an unexploded torpedo in the well after asserting its explosion, the pivotal questions are necessarily questions of fact and properly for the jury.

Argued May 11, 1898.   Appeal, No. 77, April T., 1898, by defendant, from judgment of C. P. Butler Co., March T., 1897, No. 77, on verdict for plaintiffs.   Before RICE, P. J., WICK-HAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.   RICE, P. J., dissents.

Trespass.   Before GREER, P. J.

It appears from the record and the evidence that the defendant company, in the business of shooting oil wells with high explosives, shot a well for the plaintiffs in October, 1896.   It was claimed by the plaintiffs that the shot did not explode, that plaintiffs then ran their tools in the well, believing that it had exploded, exploded the shot with the tools, and so destroyed the well.   This suit was brought to recover damages for the destruction of the well by reason of negligence of the defendant company in not exploding the shot, at the proper time and place.

Verdict and judgment for plaintiffs for $1,000.   Defendant appealed.

*Errors assigned* were to portions of the judge's charge, as follows : " 1. Mr. Brown left, went away while this man (Ed. Bowers) was running the sand pump into the well.   It might be proper for you to consider whether or not he ought to have remained.   Did old Mr. Kepple say that the shell had not gone off and he answer Mr. Kepple that it had and then go away? We leave it to you to say whether or not under all the circumstances he ought to have remained with Mr. Bowers while he was running this sand pump down to see whether or not there

was a bridge. He did not remain but came back and you heard what Mr. Bowers said he said to him: then Mr. Brown went away and afterwards the accident occurred. 2. We leave it to you to say whether or not it was carelessness in Brown not remaining when they ran the bailer to see whether or not the shell was exploded. If you think that was carelessness on his part, then it would not make any difference what Bowers told him."

*T. C. Campbell* and *James W. Lee*, with them *John B. Chapman* and *George R. Waters*, for appellant.

*Clarence Walker*, with him *Joseph B. Bredin*, for appellees.— We admit if he shoots the well where and as contracted for, and the result of the shot causes damage, it is damnum absque injuria, but he must either fulfil his contract, or render to the owner the well free from nitroglycerine, or show (the burden of proof being on him) that any damages caused, were caused free from negligence upon his part.

OPINION BY BEAVER, J., July 29, 1898:

The plaintiffs were the owners of an oil well. The production thereof had decreased to such a degree that it was thought well to attempt to increase it by the process known as " shooting." The defendants were engaged not only in furnishing torpedoes for this purpose but undertook to explode them, at the proper time, in the proper place, under proper circumstances, so as to accomplish the results aimed at, if possible. The plaintiffs made a contract with the defendants to shoot their well. The contract involved the furnishing of the torpedo, the lowering of it to its proper position in the well and the explosion of it, so as to secure, if possible, the result aimed at, namely, an increase in the flow of oil from the adjoining rock or sand to the point whence it could be pumped to the surface. The employment involved skill and responsibility. The defendants received and had a right to expect to receive at the hands of the contractor who cleaned and drilled the well a clean hole for the purposes of their employment. The contractor, who was employed by the plaintiffs to drill their well deeper and clean it, was entitled to receive at the hands of the defendant a safe hole for the continuance of his operations.

It is not denied that Brown, the agent and employee of the defendant, received a clean hole from Bowers who had the contract for deepening and cleaning the well. He placed the shell in the mouth of the well, loaded it, placed the cap in its proper place and secured it in a proper manner. As it was being lowered into the well, it is alleged by the plaintiffs that he was notified that the torpedo had become unhooked and had dropped from the wire by which it was being lowered, which was evidenced by a sound, when it struck the fluid in the well, "the same as if you would drop a stone into a well." No attention was paid by Brown to the intimation made by the bystanders. He was apparently satisfied that the torpedo had been lowered to the proper place and dropped the "go-devil" (the instrument by which the explosion is expected to be made, when it strikes the cap or fuse of the torpedo). After the "go-devil" had been dropped, the father of plaintiffs "said that he didn't believe the shot had been exploded." Brown said that it was all right—that it had gone off—and directed Bowers to run the bailer, and left the well. He returned, after getting his horses, and, after some conversation with Bowers as to what he had encountered in running the bailer, went away. After drilling in the well for some time, an explosion occurred which severed the rope by which the drill was suspended, leaving the drilling tools in the well and destroying its productive capacity. Plaintiffs brought their action against the defendants to recover the loss which they had thereby sustained.

The questions involved in the case were almost exclusively those of fact. The only assignments of error relate to the instructions of the court as to what they might find in regard to the duty of Brown. These are the instructions complained of:

"1. Mr. Brown left, went away, while this man (Ed. Bowers) was running the sand pump into the well. It might be proper for you to consider whether or not he ought to have left. Did old Mr. Kepple say that the shell had not gone off and he answer Mr. Kepple that it had and then go away? We leave it to you to say whether or not, under all the circumstances, he ought to have remained with Mr. Bowers, while he was running the sand pump down to see whether or not there was a bridge. He did not remain but came back and you heard what Mr. Bowers said he said to him. Then Mr. Brown went away and afterwards the accident occurred.

" 2. We leave it to you to say whether or not it was carelessness in Brown not remaining, when they ran the bailer to see whether or not the shell was exploded.  If you think that was carelessness on his part, then it would not make any difference what Bowers told him."   In all this there is nothing of which the defendant has any right to complain.

Whether or not the doctrine of Shafer v. Lacock, 168 Pa. 497, applies it is not necessary for us here and now to consider.   The doctrine of this case, stated in the syllabus, is : " Where the thing which causes the injury is shown to be under the management of the defendants and the accident is such as, in the ordinary course of things, does not happen, when those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care and the burden is upon the defendants of establishing their freedom from fault."   This burden was not cast upon the defendants by the court, although it may be seriously questioned whether the facts did not warrant it.

The evidence clearly shows, both by the intimation that the torpedo had become unhooked during the process of lowering it and the distinct declaration that it had not exploded after the " go-devil " had been dropped, that unusual care was necessary. Defendant's agent, however, confidently expressed the opinion that the explosion had taken place and directed the well contractor to lower his bailer.  If he meant by this that he should proceed to do his part of the work, it was evidence of his being entirely satisfied that he had discharged his duty to the plaintiffs.   He gave no intimation to the contrary, he made no examination and took no precautions himself but left the well in the hands of the other contractor as though the duty of the defendant had been completely discharged.   Whether or not he was justified in so doing was a question of fact for the jury and we can see no impropriety, so far as the rights of the defendant are concerned, in the manner in which it was submitted by the court.

The judgment is affirmed.

RICE, P. J., dissents.