Wilf, Appellant, *v.* Philadelphia Modeling and Charm School, Inc.

Argued December 17, 1964.  Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*David Goldberg*, with him *Maxwell E. Verlin*, and *Verlin & Goldberg*, for appellant.

*Jerome B. Apfel*, with him *Blank, Rudenko, Klaus & Rome*, for appellee.

*Frederick W. Anton, III*, with him *Paul H. Ferguson*, for appellee.

OPINION BY MONTGOMERY, J., March 18, 1965:

This appeal is from the refusal of plaintiff-appellant's motions for judgment non obstante veredicto and for a new trial after a jury verdict for both defendants-appellees in an action of trespass for property damage.

The only evidence in this case was presented by the appellant. Appellees did not present any evidence. Considering the evidence in the light most favorable to the appellees and giving them the benefit of all reasonable inferences to be drawn therefrom, we summarize the facts as follows. Appellant maintained a retail business of selling phonograph records on the first-floor level of a building known as 1734 Chestnut Street, Philadelphia, Pennsylvania. The Philadelphia Modeling and Charm School, Inc. (School) occupied the second floor of the same building immediately over appellant's store. On May 20, 1960, School engaged

the services of the other appellee, S. S. Fretz, Jr., Inc. (Fretz) to repair its air-conditioning equipment. About noon on that day while Frank Mugnier, an employe of Fretz, was making said repairs a water pipe was broken and water flowed from the break down from the second floor into the store of appellant and allegedly caused damages to appellant's property. The lower court in its opinion described the accident as follows:

"The repairman, with over thirty years of service and experience in the field, while servicing the School's air conditioning unit, turned off what he believed to be the water supply valve, then checked the system to determine if there were any water in the condenser. He did this by putting one wrench on a part of a union and another wrench on the other part of the union. In attempting to open the line, the pipe sheared off at a service 'L' (elbow), approximately two feet, or thirty inches from the union. This service elbow had corroded, 'which you couldn't tell until you put pressure on it and smelted it.' From all outward appearances there was no defect in the water line, including the service elbow. The apparently sound but latent corroded pipe split at the elbow joint. The water started flowing out at this break in the pipe. In opening the union the repairman was making a test to ascertain whether there was water in the line. No one knew where the main valve was. The repairman ran 'here and there, shutting off whatever valves' he could find to stop the flow of water from the broken elbow. He finally found the water valve in a powder room, in back of the hopper, in 'approximately five, eight minutes.' The water came out of the broken pipe for five to ten minutes and 'ran down this maple floor,' spreading out into the corridor and 'seemed to center' in the hallway. The people from downstairs came up and told him that the water was seeping into the store. He went downstairs, and saw water dripping through nail holes of

the metal ceiling. It was not flooding. The repairman returned to the second floor at which time the water was gone. He estimated that the water remained on the floor of the School about ten or fifteen minutes from the time the water was shut off."

Although appellant persists in the argument that he is entitled to judgment in his favor, we find no merit in this contention. Since the appellees did not admit that they were negligent and liable for damages, the establishment of negligence, causation, and damages was dependent on oral testimony. Matters which rest on oral testimony are for the jury to decide, even if the proof is clear and uncontradicted. *Yurkonis v. Dougherty,* 382 Pa. 387, 115 A. 2d 193 (1955).

Appellant's principal argument for a new trial is that he was denied the benefits of the doctrine of exclusive control by the court's refusal to charge the jury on that principle. The plaintiff's seventh point for charge reads as follows:

"We have a doctrine in our law called the doctrine of exclusive control. This means that when the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care. Therefore, if the defendants or either of them have not explained to your satisfaction that they exercised proper care to prevent the water from entering into the plaintiff's premises, you may make a finding for the plaintiff against either or both defendants, as the case may be. If you believe that either defendant has made a satisfactory explanation to you, then you should find against the other defendant. If you believe that neither of the defendants has made a satisfactory explanation to you, then you should find against both defendants."

Our Supreme Court in *Izzi v. Philadelphia Transportation Company,* 412 Pa. 559, 566, 195 A. 2d 784, 788 (1963), has outlined the five essential factors necessary before the doctrine of exclusive control can be invoked: (1) Where the thing which caused the accident is under the exclusive control of the defendant; (2) the accident or injury ordinarily would not happen if the defendant exercised due care; (3) where the evidence of the cause of the injury or accident is not equally available to both parties, but is peculiarly or exclusively accessible to and within the possession of the defendant; (4) the accident itself is very unusual or exceptional and the likelihood of harm to plaintiff or one of his class reasonably could have been foreseen and prevented by the exercise of due care; and (5) the general principles of negligence have not been applied theretofore to such facts.

The doctrine has been applied in water damage cases. *House v. Schreiber,* 168 Pa. Superior Ct. 621, 82 A. 2d 594 (1951); *Majestic Amusement Company v. Standard Cigar Company,* 79 Pa. Superior Ct. 309 (1922); *Silver Costume Company v. Passant,* 71 Pa. Superior Ct. 252 (1919); *Levinson v. Myers,* 24 Pa. Superior Ct. 481 (1904). Also see *Noah W. Shafer v. Lacock, Hawthorn & Company,* 168 Pa. 497, 32 A. 44 (1895); *Killion v. Power,* 51 Pa. 429 (1866). However, the question before us at this time is whether the doctrine is applicable where a plaintiff supplies the evidence that the defendants might have offered.

Appellant's offer to call Frank Mugnier, an employe of Fretz, as for cross-examination in establishing his case was refused since the witness was not a defendant. This was not error. *Patrick Callary and Catharine Callary v. The Easton Transit Company,* 185 Pa. 176, 39 A. 813 (1898); *Stewart v. Supplee-Wills-Jones Milk Company,* 180 Pa. Superior Ct. 583, 119 A. 2d 548 (1956). Mugnier was then called as plain-

tiff's witness and testified not only as to the control of the premises and the source of the water but also described the occurrence in detail. This makes the doctrine of exclusive control inapplicable. It is to be applied only where the evidence on causation is peculiarly or exclusively in the possession of the defendant, and not equally available to both parties. It is purely a rule of evidence determining who has the task of producing evidence or who has the risk of non-persuasion. *Eckman v. Bethlehem Steel Company,* 387 Pa. 437, 128 A. 2d 70 (1956). A presumption of fact, defined also as an inference, cannot stand after the facts have been proved. *Heath v. Klosterman,* 343 Pa. 501, 23 A. 2d 209 (1941); *Rhodes v. Pennsylvania R. R.,* 298 Pa. 101, 147 A. 854 (1929). In *Riley v. Wooden,* 310 Pa. 449, 165 A. 738 (1933), it was held that when a defendant, though called by a plaintiff as for cross-examination, has shown that the injury was not caused by the lack of due care, and his testimony is unimpeached, the rule has no application. The present case is stronger since the witness Mugnier was offered as appellant's witness and, therefore, his testimony was not subject to impeachment by the appellant.

Appellant argues that the doctrine of exclusive control has been applied in situations in which plaintiff's witnesses offered testimony showing not only the happening of the accident but also the circumstances surrounding the occurrence and in support thereof cites *Trouser Corporation of America v. Goodman & Theise, Inc.,* 153 F. 2d 284 (3rd Cir. 1946); *McManus v. Pennsylvania Electric Company,* 8 Pa. D. & C. 2d 303, affirmed per curiam, 389 Pa. 168, 132 A. 2d 242 (1957); *Turek v. Pennsylvania Railroad Company,* 361 Pa. 512, 64 A. 2d 779 (1949); and *Noah W. Shafer v. Lacock, Hawthorn & Company,* 168 Pa. 497, 32 A. 44 (1895), supra. We carefully have examined these cases and

have found them in accord with what we state herein. In *Shafer* the issue was whether a fire was caused by a spark from a tinner's firebox or by something within the house. The doctrine was applied because the defendant was in exclusive control of the roof in making repairs to it and the plaintiff's case did not show how the spark might have escaped from the box. Therefore, it was incumbent on the defendant to show that the escape of the spark was not due to lack of due care if he were to overcome the inference arising from the application of the exclusive control doctrine. The same is true in the *Turek* case where a train jumped the track for no apparent reason. In *Trouser Corporation* the explanation of the cause was supplied by the defendant and not by the plaintiff. Also, in *McManus,* wherein the dispute was whether a fire was caused by excessive current in defendant's electric line, no evidence was offered by the plaintiff that the excessive current in the line was due to defendant's negligence. Plaintiff relied on the doctrine of exclusive control from which that negligence could be inferred.

To exculpate himself from the situation that he created by interrogating Mugnier in detail, appellant belatedly attempted to include in the record a side-bar conference with the trial judge. His purpose was to show that his counsel had been dissuaded by the trial judge from relying on the doctrine of exclusive control. The record is barren of anything to support appellant's contention. At the time of the side-bar conference appellant did not make an offer for the record and did not enter an objection on this point. It was not until after his motions for judgment n.o.v. and a new trial were refused that he filed his petition to supplement the record. The grant or denial of such petitions to amend or alter records are within the discretion of the trial court, whose record it is, and are not

subject to appeal. *Nelson v. Philadelphia Rapid Transit Company*, 314 Pa. 27, 170 A. 269 (1934).

Appellant also contends that the trial judge was in error in its refusal to withdraw a juror and continue the case because of the prejudicial remarks of counsel during their summation.

The first interruption and objection was made to an alleged misstatement of the evidence relative to the length of time that water remained on the floor of the School after the pipe broke. We find evidence given by Mugnier that the water ran for five to eight minutes before being shut off and that water remained on the floor five to ten minutes thereafter. Therefore, there was no misstatement. The second occurrence related to the neglect of appellant to offer more evidence on negligence and damages. The lower court acknowledged that there was some merit to the objection and promptly instructed the jury that they were to decide the case on what they had heard and not on what they might have heard. The action of the trial judge was, in our opinion, sufficient to overcome any harm to the cause of appellant. The handling of such incidents during a trial are largely within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion. *Frontage, Inc. v. Allegheny County*, 413 Pa. 31, 195 A. 2d 515 (1963).

Appellant assigns as error the denial of his right to ask Mugnier the source of his information concerning the location of the control valves which resulted in his turning off the wrong valve. This misdirection supposedly was given by a Mr. Spence, who is not identified in the record. However, he is not a party to the action. The substance of this conversation was ruled out as hearsay although the witness was allowed to say that as a result of a conversation he went upstairs and shut off valves, none of which controlled the pipe that

he was attempting to open. The ruling of the trial judge was correct in the absence of evidence to show in what capacity Mr. Spence was acting. The court ruled specifically: "I will permit him to say that he made inquiries, but I will not permit him to testify as to whom he made those inquiries of unless you can show the authority of the person who responded to his inquiries. Therefore, in plain words, it is not binding on the plaintiff—he did not ask the plaintiff, I assume, anyway—and it is not binding on the charm school unless you can tie it in."

Appellant's next complaint is that he was denied the right to repeat a conversation which he had with Mugnier about 11:45 a.m., which was after he had returned from lunch and while the water was still dripping into his first-floor store and while Mugnier was still working with the pipes on the second floor. This was ruled out as not being part of the res gestae. While the law fixes no definite time within which statements must be made to be received as part of the res gestae, there must be no break in the continuity of the litigated acts which would afford time for reflection. *McMahon v. Edward Budd Manufacturing Company*, 108 Pa. Superior Ct. 235, 164 A. 850 (1933). Considerable latitude is afforded the trial judge in determining what is properly included. *Barkman v. Erie Indemnity Company*, 198 Pa. Superior Ct. 379, 181 A. 2d 874 (1962). We find no error in his ruling. The pipe had been broken, the water had been shut off, the accumulation of water on the second floor had been dissipated, the downstairs store had been examined by Mugnier, and he had returned to the pipes, presumably to repair them, before the alleged conversation. This negates the idea of a spontaneous utterance contemporaneous with the negligent act.

The rulings relating to evidence of damages need not be reviewed since they became academic when ver-

dicts for the defendants were returned by the jury. See *Goldstein v. Aronson,* 365 Pa. 435, 76 A. 2d 217 (1950); and *Dupont v. Gallagher,* 360 Pa. 419, 62 A. 2d 28 (1948), which hold that even erroneous instructions on damages are unimportant and harmless when verdicts are for defendants negating liability.

Finally, appellant challenges the trial court's instructions to the jury, to which he took a general exception and three special exceptions, i.e., (a) to an alleged misstatement of evidence, (b) to the failure to charge on the doctrine of exclusive control, and (c) to the failure to charge on the general duties of School as a property owner. We have discussed the doctrine of exclusive control, and we find no prejudice to appellant in either of the other two special exceptions. The charge is fair and adequately placed the issues of the case before the jury. Therefore, there are no errors requiring a new trial on any matters covered by the general exception.

We cannot say that the verdict is contrary to the evidence or to its weight since the jury could have concluded that the breaking of the pipe was not due to the negligence of either defendant. It is not difficult to understand why the jury exonerated School since the evidence readily supports the conclusion that School engaged Fretz as an independent contractor to check its air-conditioning system and that School had no knowledge of the latent defect caused by the corrosion of the pipe. Furthermore, any efforts exerted by School to correct the water condition after the pipe broke could be considered as meeting the requirements of due care. Concerning the issue of Fretz's negligence, its employe, Mugnier, testified that he turned off the only valves of which he knew the whereabouts, and that, in order to determine whether he had been successful in turning off the water before making the repairs, it was common practice to loosen a union. If

water pressure were indicated at that time, then he would know that he had not closed the proper valves and presumably would tighten the union and seek another shutoff valve. However, he testified further that while he performed this operation a section of pipe two feet away came apart because of a latent defect caused by corrosion of which he was unaware. The jury well might have determined from this evidence that this occurrence was not due to any lack of care on his part. The issues were for the jury.

Order affirmed.

WRIGHT, J., would grant a new trial.