**NAGER ELECTRIC CO., Inc.**

v.

**CHARLES BENJAMIN, INC., and Ralph R. Lanciano t/a Lanciano Hauling and Rigging et al.**

**CAMPBELL SOUP COMPANY**

v.

**CHARLES BENJAMIN, INC., and Benjamin Warehouse Company, Inc. and Sidney Benjamin, Florence Cook and Gertrude Steinberg, Individually and trading as Charles Benjamin, a partnership.**

**WESTERN GEAR CORPORATION**

v.

**CHARLES BENJAMIN, INC.**

**WESTERN GEAR CORPORATION**

v.

**BENJAMIN WAREHOUSE CO., Inc. and Sidney Benjamin, Florence Cook and Gertrude Steinberg, Individually and trading as Charles Benjamin.**

**MILWAUKEE GEAR COMPANY**

v.

**CHARLES BENJAMIN, INC., et al.**

Civ. A. Nos. 37564, 40653, 37779, 43886 and 68–216.

United States District Court, E. D. Pennsylvania.

Sept. 28, 1970.

Edward C. German, Philadelphia, Pa., for plaintiffs.

Francis E. Marshall, Philadelphia, Pa., for defendants.

## OPINION

JOSEPH S. LORD, III, District Judge.

These are five actions, consolidated for trial, to recover damages for the loss of plaintiffs' machinery resulting from a fire in defendants' warehouse. The verdict was for plaintiffs and defendants have moved for judgment or, in the alternative, for a new trial.

1. *The motion for new trial*

a. *The admission of statements of defendants' employees*

Lt. P. W. Short, of the Philadelphia Fire Department, twice interviewed two of defendants' employees, Steinard and McElwee. Lt. Short first interviewed Wayne Steinard, who had been engaged in attempting to start a forklift truck by a battery jumper cable when the fire started. This interview was directly across the street from and in full view of

the raging fire. Lt. Short's notes of that interview show:

> "—trying to start tow motor
> —spilled gasoline on floor
> —had jumper cables then gasoline ignited then cardboard cartons"

Short also spoke to John McElwee at the same place a few minutes later. As to this interview, Short's testimony as to his notes was:

> "Saw fire in adjoining bay. He was putting a rear in a truck, and I can't make out the next word, in bay area."

About 15–20 minutes after his first interview with Steinard, Short spoke to McElwee and Steinard together, in an office, out of sight of the fire and about a half block away. The following note resulted:

> "Wayne took twelve-volt battery to jump forklift right next to the cartons. * * * next to the mechanic's bay in the second bay on the south side. Started the forklift. Told him to shut forklift. Float on carburetor stuck. Gasoline on concrete floor. Told to shut down. Spark from jumper on forklift ignited gasoline. Was in middle of fire. He got burned. Tried to fight fire. Used five or six extinguishers. Gasoline ignited the cartons. Three hundred cartons."

Short testified that his first conversation with Steinard occurred at about 2:30 p. m. During both interviews, Steinard and McElwee, according to Short, were "upset". Further, when defendant Sidney Benjamin spoke to the two men around 3:00 p. m., they were "upset, quite upset," "excited to a degree and quite nervous—I guess their hearts were pounding very bad." As to their ability to answer questions, Benjamin said "they answered more or less in a way that I imagine I would have been, I think, upset * * *." Fire Marshal Connolly testified that McElwee and Steinard willingly gave their statements as to how the fire started. He said: "We didn't have to coax them to tell us what happened, how the fire started. They came right out and spoke to us about it and told us."

Defendants now assert that we erred in admitting the statements as spontaneous utterances.[1] In defining the requirements for the admissibility of such statements, Wigmore, Vol. IV, § 1750 (3d ed.) states:

> "(a) *Nature of the occasion.* There must be some *occurrence, startling enough* to produce this nervous excitement and render the utterance spontaneous and unreflecting.

> "(b) *Time of the utterance.* The utterance must have been *before there has been time to contrive and misrepresent, i. e.,* while the nervous excitement may be supposed still to dominate and the reflective powers to be yet in abeyance. This limitation is in practice the subject of most of the rulings.

> "It is to be observed that the statements *need not be strictly contemporaneous* with the exciting cause; they may be subsequent to it, provided there has not been time for the exciting influence to lose its sway and to be dissipated. * * *

> "Furthermore, there can be *no definite and fixed limit* of time. Each case must depend upon its own circumstances." (Emphasis the author's.)

We think that the criteria for admissibility have been met in this case. The startling occurrence was a mammoth and devastating fire, one of the largest in the history of Philadelphia. From time to time it was punctuated by loud and violent explosions. The fire brought to its scene 28 engine companies, 2 fire boats, 6 ladder companies, 1 rescue squad, and between 200 and 300 firemen.

---

1. While the court and the parties referred to them at trial as *"res gestae* statements," we think the better nomenclature is "spontaneous utterances."

It must be recognized that an event such as this fire is not the momentary shock of the ordinary accident.[2] It is an on-going terror, continuing until it is extinguished or brought under control. And the statements here involved were made at the height of the conflagration.

Shafer v. Lacock, Hawthorne & Co., 168 Pa. 497, 32 A. 44 (1895) involved the destruction of plaintiff's property, allegedly as a result of the negligence of defendant's employees. In affirming a judgment for plaintiff, the court said, at pages 502–503, 32 A. at page 46:

> " * * * it is contended in support of the appeal that the declarations of the workmen, made while the fire was in progress, to the effect that it was caused by their carelessness, were not admissible to charge their employers with liability for the consequences of it. We think this contention is sufficiently answered by the decisions of this court in Hanover Railroad Co. v. Coyle, 55 Pa. 396; Tompkins v. Saltmarsh, 14 S. & R. 275; Elkins v. McKean, 79 Pa. 493, and Penna. Railroad Co. v. Lyons, 129 Pa. 113, 18 A. 759. We accordingly overrule the first, second, and third specifications of error. * * * "

Similarly, in Patterson v. Baltimore & O. R. Co., 133 Md. 276, 105 A. 159 (1918), plaintiff offered testimony of a witness of statements made by defendant's employees during the height of a fire as to its cause. The court said (105 A. at 160–161):

> " * * * In every aspect they were within the requirements of the rule for the admission of declarations forming part of the res gestae. * * * "

Both of those cases turned simply on the fact that the statements were made while the fire was in progress. Here, we have more. We have definite evidence of the condition of the declarants as being "upset," "very upset" and "excited." This, coupled with the fact that the "progressive event," the fire, was still raging convinces us that the statements were properly admitted.

■ Defendants argue, that, in effect, we permitted the jury to pass on the admissibility of the statements and that this was error. If our instruction had the effect which defendants attach to it, we agree that it was improper. Wigmore, Vol. IX, § 2550 (3d ed.). However, it is at least arguable that the purport of the instructions was simply that it was for the jury to determine the weight to be given to that evidence. In any event, since we have determined that the statements were admissible, under defendants' construction of our charge, they received more than they were entitled to. Any error was harmless.

### b. *The use of P–1*

■ As mentioned above, Lt. Short testified to the statements made by Steinard and McElwee as to the cause of the fire. Fire Marshal William Connolly, called by defendants, testified that he remembered that McElwee had mentioned that the fire could have been caused by a backfire of the forklift. Connolly stated that when he reviewed the report prepared by Short (P–1), he found it made no mention of backfire and that he questioned Short about this. Plaintiffs were permitted to cross-examine Connolly on the contents of P–1, which he had approved and which contained no reference to a backfire. We permitted no reference to the conclusions of Lt. Short contained in the report, but permitted the cross-examination solely to show that, in the nature of a prior inconsistent statement, contrary to his testimony here that another possible cause of the fire had been mentioned, he approved an official report which contained no mention of that other cause. We think this was proper impeachment evidence.[3]

2. *Cf.* Zibelman v. Gibbs, 252 F.Supp. 360 (E.D.Pa.1966).

3. No motion was made by defendants for any limiting instruction in the charge and none was given.

### c. The voir dire

We permitted plaintiffs' counsel to read to the jury panel the first three questions approved in Kiernan v. Van Schaik, 347 F.2d 775 (C.A.3, 1965).[4] Counsel for defendants now argue that because plaintiffs' counsel had inquired as to the jurors' occupations and their spouses' occupations, this further inquiry was both unnecessary and unfairly prejudicial to defendants. We do not agree.

■ It is not enough for a plaintiff to know merely the employment of a prospective juror. He is entitled to know whether the juror is or may be insurance-oriented. It is, of course, axiomatic that generally insurance covers those against whom claims are asserted and when the claim is asserted in court, the target is the defendant. Certainly, the three questions approved by the Court of Appeals are precisely designed to ferret out an insurance (defendant) bias. One's predilections may be formed consciously or subconsciously and we cannot say that a casualty insurance company stockholder, for example, could not have at least a subconscious bias in favor of such companies. It is not unimportant to note that in Kiernan, the use of such questions was not regarded as discretionary; the district court was reversed for its refusal to permit them.

### d. Interest or damages for delay

■ There is no doubt that in some cases sounding in tort, damages, in the nature of interest, may be allowed as compensation for delay in payment. Marrazzo v. Scranton Nehi Bottling Co., 438 Pa. 72, 263 A.2d 336 (1970). This "is an issue for the finder of fact, the resolution of which depends upon all the circumstances of the case." Id., at p. 75, 263 A.2d at p. 337. All parties agree that the recovery of interest for delay is committed to the sound discretion of the trial court.

■ Here, liability was sharply contested. Plaintiffs' only bases for recovery were the alleged statements of McElwee and Steinard. Lt. Short's testimony as to these might or might not have been believed and even if believed, a jury could have found that this was simply an unfortunate and non-negligent accident. There was, in short, no inescapable obligation for defendants to pay in the absence of a jury command. That defendants were justified in withholding payment until compelled by a jury to do so is underscored by the fact that one jury was unable to reach agreement on its responsibility. To characterize this as "wrongful detention" would be to stigmatize, with a money penalty, what we consider to be the good faith assertion of a defense. The plaintiffs' request for interest will be denied.

### 2. The motion for judgment n. o. v.

■ Defendants' motion for judgment n. o. v. is without merit. There was clearly a jury issue and the motion will be denied.

---

4. "1. Are any of you employed by or stockholders in an insurance company which is engaged in the casualty insurance business?

"2. Are any of you engaged in the general insurance agency business or are any of you an agent for a casualty insurance company?

"3. Have any of you ever worked as a claims investigator or insurance adjuster?

"4. Have any of you read any articles or advertising in periodical publications which tend to indicate a relationship between the amounts of personal injury verdicts and increases in insurance premiums? * * *"