# Oster *v.* Schuylkill Traction Co.

*Negligence—Street railways—Duty of motorman as to children.*

In an action for personal injuries to a child six years and eleven months old, where the motorman testified that when he was "fifty or sixty yards away, maybe more than that," he saw children in the road on both sides of the track and only a few feet from it; and that he knew a schoolhouse was there; seeing the children in the road was notice to him that it was recess, or at least that the school was not in session. These circumstances imposed upon him the duty of at once getting his car under special control. Whether he did all that was reasonably proper for that purpose was a question for the jury.

Cases of this kind where it is for the court to direct a verdict are confined to those in which the uncontested evidence leads to the conclusion that the child ran in front of the car so quickly and under such circumstances that the motorman had no reasonable ground to apprehend such action and no time after it to avoid the collision.

*Negligence—Evidence, Declarations—Street railways.*

In an action against a street railway company for personal injuries, the admission in evidence of a conversation with the motorman is not erroneous, where the whole conversation testified to amounted to no more than a question by the motorman whether the witness had heard the bell ring, and the witness replied that he had not.

Argued Feb. 12, 1900.　Appeal, No. 96, Jan. T., 1899, by defendant, from judgment of C. P. Schuylkill Co., Nov. T., 1895, No. 166, on verdict for plaintiff in case of Arthur William Oster v. Schuylkill Traction Company.　Before MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ.　Affirmed.

Trespass to recover damages for personal injuries.

At the trial it appeared that on March 21, 1895, plaintiff, then a child of nearly seven years of age, was knocked down and injured by one of defendant's cars.　At the time of the accident there was recess at the school which the plaintiff attended, and plaintiff with other children was playing in the road near the schoolhouse, on which defendant operated its railway.　The evidence showed that the car was run at a high rate of speed. The evidence as to whether a gong was rung was conflicting. Harry Gaughan, the motorman in charge of the car, testified that when he was about fifty or sixty yards away from where the accident occurred he saw children in the road on both sides of the track and only a few feet from it.　He stated that he did not have time to stop the car before it struck the boy.

A witness for the plaintiff was asked this question:

" Q. Did you hear the motorman and conductor say anything after the accident?　A. I was talking to him a little while. Q. To which one?　A. I do not know; I think he was a smooth-faced man; he asked me if I heard the bell.　I went up on the car after with him."

Mr. Farquhar: " Was this while you were on the car afterwards that you had the talk with him?　A. Yes, sir; he asked me if I had seen—

Mr. Farquhar: We object to what took place then.

" Q. You got on the car as it came back, did you?　A. Yes, sir.　Q. To go to Ashland?　Yes, sir."

Mr. Brumm: State what the conductor or motorman said to you concerning the accident.

Mr. Farquhar: " We would like to fix in your question when—"

Mr. Brumm: I put it in the general way first.　I claim it is immaterial when.　That is the question.

Mr. Farquhar: The defendant objects to any conversation which did not take place at the immediate time of the accident

and was part of the res gestæ; any conversation that took place between the witness and the motorman or conductor after the accident occurred, and when the car had gone to Locust Dale and was on its way back to Ashland, would be incompetent and immaterial, and for the purpose of ascertaining when that conversation took place, I ask permission to cross-examine the witness.

The Court: We would like to know for the purpose of ruling, when it was—at the time or subsequent to the accident. It would be admissible if it happened at the time, and might not be admissible if it happened after.

Mr. Brumm: We will limit the question for the present at any rate to the time, a short time, after the accident, for instance, on the return trip from the accident, before the agent could have had any considerable intercourse with any person.

Mr. Farquhar: We object to anything that took place on the return trip of the car, or any declarations made by the motorman or conductor at that time, as not being part of the res gestæ, and incompetent, immaterial and irrelevant.

The Court: How far did this car run before they made the return trip?

Mr. Farquhar: It runs to Locust Dale. I do not know how far it is from this place, but some distance, and then this was on the way back.

Mr. Brumm (addressing Mr. McAndrews): How far is it from where the accident occurred to the terminus of the road?

Mr. McAndrews: Probably 200 or 300 yards, likely 200 yards, I guess, out to the terminus.

Mr. Brumm: Then the car ran 200 yards one way and 200 the other?

Mr. Farquhar: No, they do not say whether it was on the return trip; they had gone back to Locust Dale and turned around; the accident was over.

Mr. Brumm: We will withdraw the question for the present.

" Q. Where did you have this conversation with the conductor? A. As soon as I got in the car. Q. Where did you get into the car? A. About where the boy was killed. Q. How long after the accident? A. After he was taken away. Q. How long about? "

The Court: It was not on the return trip at all.

"A. No, sir; we had not started."

The Court: We will hear the testimony.

Defendant excepts.   Bill sealed. [3]

"Q. State what the conversation was.   A. He only asked me if I heard the bell ring.   Q. What did you say?   A. I said, no, sir.   Q. What else was said, if anything?   A. Nothing of any importance, we were only talking about how frightened we all were."

Verdict and judgment for plaintiff for $2,241.66.   Defendant appealed.

*Errors assigned* were (2) in refusing binding instructions for defendant; (3) ruling on evidence, quoting the bill of exceptions.

*Guy E. Farquhar*, with him *Otto E. Farquhar*, for appellant.—Where the sole basis of liability is the omission to perform a certain duty suddenly and unexpectedly arising, there must be not only a consciousness of the facts which raise the duty on the part of the person who is charged with its performance, but also a reasonable opportunity to perform it: Sekerak v. Jutte, 153 Pa. 117; Hestonville, etc., Ry. Co. v. Kelley, 102 Pa. 115; P. & R. R. R. Co. v. Spearen, 47 Pa. 300; Smith v. O'Connor, 48 Pa. 218; Chilton v. Central Traction Co., 152 Pa. 425; Fleishman v. Neversink Mountain R. R. Co., 174 Pa. 510; Funk v. Electric Traction Co., 175 Pa. 559; Kline v. Electric Traction Co., 181 Pa. 276; Pletcher v. Scranton Traction Co., 185 Pa. 147; Callary v. Easton Transit Co., 185 Pa. 176; Gould v. Union Traction Co., 190 Pa. 198; Citizens' Street Ry. Co. v. Carey, 56 Ind. 396.

It is a fundamental principle, that while an inference may be drawn from proven facts, yet a second inference cannot be based upon the first inference: Douglass v. Mitchell, 35 Pa. 440.

Declarations coming within the rule as to the res gestæ must be made before the occurrence is ended.   If the occurrence is ended and the speaker is narrating something of the past, it is not part of the res gestæ: Coll v. Easton Transit Co., 180 Pa. 626; Wharton on Evidence, sec. 259.

*Charles N. Brumm,* with him *George Dyson,* for appellee, cited Dunseath v. Traction Co., 161 Pa. 124, Dominica Iaquinta v. Citizens' Traction Co., 166 Pa. 63, Buente v. Pittsburg, Allegheny & Manchester Traction Co., 2 Pa. Superior Ct. 185, Walbridge v. Schuylkill Electric Ry. Co., 190 Pa. 274, and Thompson v. United Traction Co., 193 Pa. 555.

PER CURIAM, April 9, 1900:

The motorman testified that when he was "fifty or sixty yards away, maybe more than that" he saw children in the road on both sides of the track, and only a few feet from it. He knew the schoolhouse was there and seeing the children in the road was notice to him that it was recess, or at least that the school was not in session. These circumstances put on him the duty of at once getting his car under special control. Whether he did all that was reasonably proper for that purpose was necessarily a question for the jury. The cases of this kind where it is for the court to direct the verdict are confined to those in which the uncontested evidence leads to the conclusion that the child ran in front of the car so quickly and under such circumstances that the driver or motorman had no reasonable ground to apprehend such action and no time after it to avoid the collision. In such cases the direction by the court is based on the entire absence of any sufficient evidence of defendant's negligence.

The only other question raised by the assignments of error is not important. The offer of the conversation with the motorman or conductor as part of the res gestæ was not as precise in respect to proximity of time and place as it might reasonably have been made, and might have been rejected on that ground, but the whole conversation testified to amounted to no more than a question by the motorman whether the witness had heard the bell ring, and the reply that he had not. This was wholly unimportant in affecting the result.

Judgment affirmed.