## McCaulif et al. *v.* Griffith, Appellant.

Argued April 19, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Thomas D. Caldwell* of *Caldwell, Fox & Stoner,* and with him *Friedjoff D. Tappert,* for appellant.

*Frank P. Barnhart,* and with him *Samuel R. Di-Francesco,* for appellee.

Opinion by Stadtfeld, J., October 2, 1933:

These are appeals by defendant from two several judgments entered on verdicts in favor of plaintiffs in two actions of trespass, in the first of which, Warren McCaulif sued in his own right, and in the second one, Kenneth McCaulif, son of the plaintiff in the former

action, sixteen years of age, by his father and next friend, and Warren McCaulif, the father, in his own right, sued the defendant George W. Griffith. The actions grew out of a collision between the truck of defendant, driven by Raymond H. Logan, since deceased, and the wagon driven by Warren McCaulif, one of the plaintiffs, the son, Kenneth McCaulif, being an occupant of the wagon at the time of the collision. As a result of the accident, the father was severely injured and was incapacitated from his work for a period of seventeen weeks. The boy received a severe knee injury, and was incapacitated for a week following the accident. A week or two after the accident, he was able to follow his regular work, but because of trouble with his leg as a result of a floating cartilage in the kneecap area, an operation became necessary.

At the instance of defendant, the estate of Raymond H. Logan was brought in as a party defendant on sci. fa. Both cases were tried together. The court directed a verdict in favor of the estate of Raymond H. Logan, deceased, and submitted the cases to the jury as to George W. Griffith, the original defendant. The jury rendered a verdict in the action on behalf of the minor son, in the sum of $400 for the son, Kenneth McCaulif, and in the sum of $566.50 for the father, Warren McCaulif. In the separate action on behalf of the father, Warren McCaulif, the jury rendered a verdict in his favor for $2,230.50. Motions for new trial and judgment non obstante veredicto were filed in each case, which, after argument before the court en banc, were overruled in an opinion by McCANN, P. J., and judgment entered on the verdicts. From these judgments, these appeals are taken by defendant.

The accident occurred on July 1, 1930, in the forenoon on the Menoher Highway, Cambria County. The plaintiff, Warren McCaulif, was driving his wagon, drawn by two horses, in a westerly direction with his

son, Kenneth McCaulif, seated on the rear end of the wagon bed with his legs hanging down on the outside. Plaintiff testified that he had stopped on the right hand side of the road, and engaged in a conversation with one Bopp, opposite the latter's barbecue stand and filling station, when he heard defendant's truck driven by Raymond Logan, approaching. The point where plaintiff's wagon stood, while he was talking to Bopp, was on a straight upgrade of 4%, approximately 450 feet from the low point of the road, in the direction from which the truck approached. As soon as plaintiff heard the truck approach, he started up the road, and when he had travelled a distance of eighty feet, the truck collided with the left rear corner of the wagon, damaging the same and injuring one of the horses.

The plaintiffs' testimony was to the effect that the truck was approaching at an excessive rate of speed and that in applying the brakes, which were alleged to be defective, the truck swerved to the right in passing, and collided with the left rear end of plaintiff's wagon. Except for the wagon and Bopp's truck, which was parked at the edge of the road below his service station, the road was clear of vehicles for a distance of eight hundred feet from the bottom of the grade to the top.

On cross-examination, plaintiffs admitted that they owned a dog which accompanied them on their trip and that he was eating garbage alongside of the barbecue stand when the wagon started. The defendant's evidence showed that when the truck was about ten feet from the wagon, the plaintiffs' dog suddenly ran across the road in front of the truck, which caused the driver to apply his brakes and turn the truck to the right, to avoid hitting the dog. Two boys on the truck with the driver, who was dead at the time of the trial, testified that the dog ran across the road directly in front of the truck, and that to avoid hitting the dog

the driver applied the brakes, swerved the truck to the right, succeeded in avoiding the dog, but could not turn the truck back to the left quickly enough to avoid hitting the rear corner of the wagon. On cross-examination, plaintiffs admitted the presence of the dog, but claimed he had nothing to do with the accident.

The trial judge instructed the jury that the accident was caused either by defective brakes or improper driving. The jury was told that the plaintiffs were not guilty of contributory negligence as a matter of law, and that the sudden appearance of the dog on the highway had nothing to do with the accident.

The assignments of error relate to competency of plaintiff as a witness, and the admission of his testimony, the admission of the declarations of the deceased driver of the truck made one hour and one-half after the driver had returned to the scene of the accident after taking an injured person to the hospital, the admission of testimony as to the speed and operation of defendant's truck 1,400 feet from the scene of the accident, the admission of plaintiff's testimony as to damages as suffered by loss of earnings, and the value of his own services and those of his son; errors in, and inadequacy of, the charge of the court, and the refusal to withdraw a juror because of the mention of an insurance company by a witness for defendant on cross-examination by plaintiff's counsel.

Appellant assigns as error the admission of plaintiff's testimony and that of his son, as to the happening of the accident, because the driver of the truck, Raymond H. Logan, was dead at the time of trial.

Clause E of Section 5 of the Act of May 23, 1887, P. L. 158, 28 Purdon's Penna. Statutes, Section 322, provides: "Nor, where any party to a thing or contract in action is dead, or has been adjudged a lunatic and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on

the record who represents his interest in the subject in controversy, shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse to the said right of such deceased or lunatic party, be a competent witness to any matter occurring before the death of said party ......"

It has been held that this act, relating to the competency of witnesses, makes no distinction between actions sounding in tort and those arising from contract: Irwin v. Nolde, 164 Pa. 205.

The decisions under the Act of 1887 uniformly hold that one who is merely an agent for a person or corporation acting for his employer or principal is not a party whose death will render the other party to the transaction incompetent as a witness: American Life Insurance & Trust Company v. Shultz, 82 Pa. 46, 51; Africa v. Trexler, 232 Pa. 493, 503; Danish Pride Milk Products Company v. Marcus, 272 Pa. 340, 344. Neither does the death of a stranger to the transaction affect the competency of the survivor: Hostetter v. Schalk, 85 Pa. 220, 222. Therefore, as the action stood in the court below, the fact that Logan, the driver of defendant's truck, had died prior to the trial, did not in any manner affect the competency of plaintiff to testify to the circumstances of the accident, unless his competency was affected by the act of defendant in bringing the agent on the record under the Act of April 10, 1929, P. L. 479, as amended June 22, 1931, P. L. 663.

The only way in which plaintiff's competency could be affected by the Act of 1929, would be on the theory that the joinder of Logan at the instance of defendant made him a party defendant in so far as the original suit brought by plaintiff was concerned, so that he would be in the same position as if originally sued jointly with his employer the other defendant. There is nothing in the Act of 1929, however, to justify

such conclusion. In Vinnacombe v. Philadelphia and American Stores Company, 297 Pa. 564, the court, in discussing the Act of 1929, said by Mr. Justice SIMPSON (page 569): "Nothing in the act shows the slightest intention to affect plaintiffs in such suits. Consequently, the adding of additional defendants will give no higher right to plaintiffs than they had before. As to them the action proceeds against the original defendant only, exactly as it would have done if the additional defendants had not been named," ...... and on page 573, "The issues raised by the scire facias and the proceedings following it, are between the two classes of defendants only, and are, in form and effect, in assumpsit (Phila. v. Reading Co., 295 Pa. 183), whether the original proceedings are in assumpsit or trespass."

The language quoted above was approved in First National Bank of Pittsburgh v. Baird, 300 Pa. 92, 95, where it was also said (page 97): "To compel plaintiffs 'to move against' every one brought in by the scire facias, would often require him to proceed against one regarding whom he never had a claim."

To same effect is Carroll v. Quaker City Cabs Inc., 308 Pa. 345, where the present chief justice said, on page 349: "The Act of 1929 was intended to expedite procedure by avoiding a multiplicity of suits, and it confers undoubted benefits upon defendants who pursue the remedy indicated therein; but it does not alter the rights which existed previous to its passage."

The amendment of June 22, 1931, supra, gives the right, at the instance of defendant, to have joined, as additional defendants, persons whom he alleges are alone liable, or jointly or severally liable with him, for the cause of action declared on, and provides for the entry of judgments against such additional defendants. It, however, as indicated by its title was "to regulate procedure" and not in any way to affect the competency of witnesses.

The purpose of the Act of 1887, was to enlarge, not to restrain the admission of evidence. In the language of Mr. Justice Green in Sargeant v. Nat. L. Ins. Company, 189 Pa. 341, 345: "The fault in the reasoning lies in treating a mere agent of a party as if he were the party himself. The act does not exclude agents, but parties, surviving parties where the other party is dead. But an agent is not a party to the thing or contract in action. It is the principal for whom the agent acted who is the surviving party to the contract."

To sustain the position of appellant, would enable any defendant to bring on the record the estate of an agent or deceased employee, whose negligence was the basis of the cause of action, and thereby close the lips of plaintiff. It would require an unmistakable expression on the part of the legislature, indicating such intention, to warrant a conclusion as contended for. We see no merit in the first and second assignments of error and the same are overruled.

The third and fourth assignments of error relate to the admission of declarations of the deceased driver made as to the cause of the accident one and one-half hours after the accident. The court below permitted Roy Hofecker and Mary Green to testify as to declarations made by Raymond Logan, the deceased driver of defendant's truck, made one hour and one-half after the accident and after the decedent had returned from travelling seven miles to take an injured person to the hospital. These declarations were clearly incompetent, not being part of the res gestae: Greed v. Manufacturer's L. & H. Co., 238 Pa. 248; Leonard v. B. & O. R. R. Co., 259 Pa. 51. Appellee endeavors to justify their admission for the purpose of contradicting Homer Griffith, superintendent of defendant, a witness called on behalf of the latter, and who denied having had any conversation with Logan after the accident wherein the alleged declarations were made.

While it might be competent to contradict him by showing the fact of his having had a conversation with Logan, it was not competent to admit the declarations of Logan, as this would be permitting by an indirect manner the introduction of testimony which was not competent as a part of the res gestae. The third and fourth assignments of error are sustained.

Appellant's fifth assignment of error is that the trial court erred in admitting testimony as to the speed and operation of defendant's truck 1,400 feet from the scene of the accident. One of the questions at issue was the speed of the car at the time of the accident. Testimony as to its speed when a quarter of a mile away was irrelevant and should not have been admitted: Sanders v. Stotesbury, 100 Pa. Superior Ct. 523. The fifth assignment of error must be sustained.

The sixth and seventh assignments of error relate to the admission of testimony as to damages suffered by loss of earnings, and the value of the services of plaintiff and his son. The learned trial judge admitted, under objection, testimony of plaintiff as to the fair value of his services per month in order to establish loss of earnings. Plaintiff testified his own services were worth around $150 per month. He also testified, under objections by defendant, that his son's services were worth $75 per month. It also appeared from his testimony, that he kept books, but his estimate of the value of his services was not based upon the books and records he kept.

Plaintiff was engaged in the business of dairying, and, in connection therewith, rented a farm as well as the cattle, wagons and machinery connected therewith. Although plaintiff kept records of his receipts and expenditures and testified that at times he paid three or four dollars per day for help while he was injured, the books were not offered in evidence, nor was the jury informed as to the extent of the business or the results from the operation thereof. The plaintiff was permit-

ted to give an opinion as to the value of his own service, as also the value of his son's services, without any sufficiently supporting legal evidence to sustain the same. There was no proper evidence before the jury from which it might determine plaintiff's loss of earnings: Gilmore v. Phila. R. T. Co., 253 Pa. 543. In the case of Zimmerman v. Weinroth, 272 Pa. 537, 540, the court held: "There was no proof as to the value of the services she did or could perform, yet the trial judge submitted to the jury the question of her loss of earning power; this was error, for it enabled the jury to base a verdict upon a mere guess or conjecture, which cannot be done: see Peters v. Bessemer, etc. R. R. Co., 225 Pa. 307. The loss of earning power and its amount must appear by proper and satisfactory proof and not be left to mere conjecture: Frysinger v. Phila. R. T. Co., 249 Pa. 555, 560. The value of such services as plaintiff performed prior to the accident, and of such as she could perform thereafter, was the subject of proof, without which no recovery for diminution thereof can be sustained (Kost v. Ashland Borough, 236 Pa. 164) for, before an allowance can be made for loss of earning power, it must be fairly proved: Helmstetter v. Pitts. Rys. Co., 243 Pa. 422. 'Earning power which is to be compensated in such cases must necessarily be the subject of substantive proof.' (Boggess v. B. & O. Railroad Co., 234 Pa. 379, 390), without which it is error to submit that question to the jury: McKenna v. Citizens' Natural Gas Co., 198 Pa. 31. While proof of the age, health and habits of the party injured is competent in such cases, yet standing alone it does not afford a sufficient basis upon which to rest a verdict." The sixth and seventh assignments of error must be sustained.

The eighth, ninth, tenth, eleventh and twelfth assignments of error relate to the charge of the court, and these require an examination of the same. Appellant claims the trial court, in its charge, did not properly

instruct the jury as to the burden of proof, the weight of the evidence, interested and disinterested testimony, and the defense of sudden emergency.

The trial judge, in his charge, said, "now before the defendant may be held liable in this case, it must be proved to the satisfaction of the jury by the weight of the evidence in the case that the defendant was negligent ...... and if, after you have considered all of the testimony in this case, you come to the conclusion by the weight of the evidence in the case, that the defendant failed to observe due care in either respect, etc., ......" We think the court should have explained to the jury the difference between interested and disinterested testimony, and should have cautioned them in regard thereto in weighing the conflicting testimony. The charge in that respect was inadequate.

The trial judge in regard to sudden emergency, instructed the jury as follows: ...... "They also offered the defense that the defendant in this case, that the agent of the defendant in this case, observed due care under the circumstances of the case, that he was confronted by a sudden emergency, a dog jumping out and running into the road in front of him. ...... Now, the question there would be, even if the dog did jump out in front of the car, did the driver exercise due care, ...... Was he confronted with sudden emergency, was there anything there that affected his care or his duty of care? Even if the dog sprang out in front of him, which the plaintiff contends it did not, did it affect his duty of care. The dog was along the road, the dog had nothing to do with it, but even if the dog came out in front of the truck suddenly, was the defendant warranted under the circumstances of the case, as they appeared to him, in the exercise of the best judgment he could exercise under the circumstances, and under the exercise of ordinary care,

was he justified in swinging to the right and hitting the wagon instead?"

While the charge as a whole, on this point stated the law correctly, the question of whether or not there was a sudden emergency which confronted the driver, was one of fact for the determination of the jury, and the statement by the court "that the dog had nothing to do with it" and, the further statement "either one or the other acts of negligence, or alleged acts of negligence, is the cause of this injury, either the defective brakes, or improper driving" tended to impress the jury that the question of sudden emergency was out of the case. In this statement we think there was error. The court should have instructed the jury that one who, in sudden emergency, acts according to his best judgment, or who, because of want of time in which to form that judgment, omits to act in the most judicious manner, is not chargeable with negligence: Donahue v. Kelly, 181 Pa. 93; Wingert v. Phila. & R. Ry. Co., 262 Pa. 21; Leslie v. Cantanzaro, 272 Pa. 419. In stating to the jury ...... "Even if the dog did come out in front of the truck suddenly, was the defendant warranted under the circumstances of the case as they appeared to him in the exercise of the best judgment he could exercise under the circumstances and under the exercise of ordinary care, was he justified in swinging to the right and hitting the wagon instead," would lead the jury to believe that in endeavoring to avoid hitting the dog, in the exercise of his best judgment, he chose to hit the wagon instead.

The language of the court would tend to place upon the driver, the exercise of a deliberate judgment, notwithstanding a sudden emergency. The eighth, ninth and tenth assignments of error are sustained.

The twelfth and thirteenth assignments of error relate to the refusal of the court to withdraw a juror after an insurance company had been mentioned by a witness for defendant, on cross-examination by plain-

tiff's counsel, and to the charge of the court in relation to this testimony.

Defendant's witness, Chapple, on cross-examination by counsel for plaintiff, testified (183a) : "Q. Did anybody talk to you about this case before you came in? A. No, sir. Q. Nobody talked to you about it? A. One of the insurance company's lawyers came to my place and told me to tell the story. Q. That is the one time you talked about this? A. I talked to my family at home." After further cross-examination, on other matters, counsel for defendant stated that (183a): "An insurance company has been mentioned as carrying insurance for the defendant in this case as a result of a question by plaintiffs' counsel as to who had talked to him about this case beforehand." And for this reason a motion for withdrawal of a juror and continuance of the case was made and overruled.

The mere reference to an insurance company, or its agent, which does not disclose anything indicating that it had insured the defendant, or the extent of its liability, are not such references as might reasonably lead a jury to believe that any verdict rendered by it would be paid by an insurance company, and are not ground for the withdrawal of a juror: King v. Keller, 90 Pa. Superior Ct. 596. The answer made by the witness was entirely harmless, because it did not say on whose behalf the insurance was carried. Had nothing been added by defendant's counsel in entering his objection, the evidence would have been entirely harmless. The court did not err, in the exercise of its discretion, in refusing to withdraw a juror. The court, however, in its charge, prompted, no doubt, by a sincere desire to eliminate any prejudice in the minds of the jury, explained at some length the duty of the jury to ignore this reference to an insurance company and not to be influenced by it. It was amplified to an extent probably greater than necessary, but defendant should not in fairness, urge as error the

portion of a charge necessitated by what counsel urged in his own objection to testimony in itself not objectionable. We would not reverse on this ground alone, but have referred to it only because the case must go back for another trial.

The third, fourth, fifth, sixth, seventh, eighth, ninth and tenth assignments of error are sustained. The several judgments are reversed with a venire.