**TROUSER CORPORATION OF AMERICA**
**v. GOODMAN & THEISE, Inc.**

No. 8936.

Circuit Court of Appeals, Third Circuit.

Argued Dec. 6, 1945.

Decided Jan. 22, 1946.

Raymond T. Law, of Scranton, Pa. (Mackie, Murphy & Law, of Scranton, Pa., on the brief), for appellant.

Claude Bialkowski, of Scranton, Pa. (Bialkowski, Bialkowski & Bialkowski, of Scranton, Pa., on the brief), for appellee.

Before BIGGS, GOODRICH, and Mc-LAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case arises on appeal from a judgment of $2300 for the plaintiff based on the alleged negligence of defendant. Plaintiff and defendant each occupy a floor in a building owned by a third party. Plaintiff's place of business was, at the time of the occurrence dealt with here, on the floor directly below defendant. As part of the water purifying machinery needed in its business, defendant used a "Fulflo Filter". Sometime during the weekend of February 14-15, 1943 water escaped from defendant's premises and leaked through the floor to the damage of plaintiff. The jury found for the plaintiff. This finding was necessarily that the operation of the "Fulflo Filter" was negligent, since the escape of water from the filter was the source of the damage. The case is in federal court on grounds of diversity only; no federal question is involved. The facts all have their setting in Pennsylvania and the law of Pennsylvania controls both as to the existence of liability and the damages recoverable.

In Sierocinski v. E. I. du Pont de Nemours Co., 1941, 118 F.2d 531, this Court had occasion to consider the defendant's liability in a tort claim based on negligence under Pennsylvania law. It was there pointed out that the burden rests upon the plaintiff to show a case upon which the inference of negligence may be drawn. In certain circumstances, it was said, the burden of going forward with the evidence is eased by an application of Pennsylvania's own doctrines of (1) res ipsa loquitur or (2) the inference of negligence permissible from a defendant's exclusive control of the instrumentality which inflicts the injury. The doctrine of res ipsa loquitur, it was explained, is limited in Pennsylvania to cases involving injury to passengers or to patrons of utilities dispensing a service which, if not properly managed and controlled may readily prove dangerous. Res ipsa loquitur clearly has no part in the case under consideration now.

But what we may for convenience call the "exclusive control" rule seems with equal clearness to be applicable to this set of facts. That the defendant had exclusive control over the part of the premises where the filter was kept and operated is shown by undisputed testimony. There was no doubt that the damage came by reason of escape of water from the filter. That this combination of facts is one from which a defendant's negligence can be found in absence of satisfactory explanation by him, is established by several Pennsylvania de-

cisions which deal with liability for escaping water.[1]

■ The defendant advanced a theory to explain the accident and some facts purporting to support it. It showed that at the time of the accident the weather had suddenly turned very cold. It also endeavored to prove that the building was likewise very cold at the time. This was disputed and there was testimony both ways. The cold forced the filter apart, defendant's testimony said, and the water escaped.' The jury was at liberty to find against defendant upon the temperature conditions in the building. It was also free to reject the explanation that the filter came apart because of the contraction of one part of it which was fastened to the other by screw threads. The pieces were composed of the same metal and the jury was not required to find that the coefficient of expansion was different for one piece than the other. The finding for the plaintiff necessarily showed that the defendant's explanation was rejected as it well could be.

The clarity of the result for the plaintiff is clouded by evidence introduced by it against defendant's objection consisting of statements purported to have been made by one Housley to witnesses for the plaintiff.[2] This witness was a "warper foreman" for defendant. It was not his job to look after the filter; another employee did that. But when the plaintiff's people came to work on the morning in question and found water in their place of business they went upstairs to defendant's floor. There Housley is stated to have said that someone took the filter out and did not put it back in, or "forgot to put the Fulflo Filter on".

---

[1] In Killion v. Power, 1866, 51 Pa. 429, 91 Am.Dec. 127, "action was brought for negligence in leaving open a stop-cock, in the third story * * * thereby flooding with water the store of the plaintiff in the basement." The Pennsylvania Supreme Court said: "A duty lay upon [defendant] to take care that so dangerous a thing as this stop-cock was under the circumstances, should not be left open, to flood the store of his neighbor below stairs. The maxim sic utere tuo. ut alienum non laedas, has here its most apposite application." To the same effect are Levinson v. Myers, 1904, 24 Pa.Super. 481, and Silver Costume Co. v. Passant, 1919, 71 Pa.Super. 252, also involving escaping water damaging premises below, and citing Killion v. Power. See also Majestic Amusement Co. v. Standard Cigar Co., 79 Pa.Super. 309 (exclusive possession of leased premises, and burst water pipes enough to show negligence; judgment for landlord affirmed).

In Shafer v. Lacock, 1895, 168 Pa. 497, 32 A. 44, 46, 29 L.R.A. 254, which is often cited as a complement to Killion v. Power, the Pennsylvania Supreme Court said, "There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred. * * * The defendants, by their servants, were in exclusive possession of the roof, and the destruction of the property was due to fire brought there by them, and under their control. The occurrence was not in the ordinary course of things, and the circumstances connected with and surrounding it put on them the duty of showing that it was at least consistent with the exercise of proper care in the performance of their work."

In McCoy v. Ohio Valley Gas Co., 1906, 213 Pa. 367, 62 A. 858, 859, the Pennsylvania Supreme Court said: "The rule in such cases is thus stated by the present Chief Justice in Zahniser v. Pennsylvania Torpedo Co., 190 Pa. 350, 42 A. 707: 'In cases where the duty is not absolute, * * * it is essential that it shall appear that the transaction in which the accident occurred was in the exclusive management of the defendant, and all the elements of the occurrence within his control, and that the result was so far out of the usual course that there is no fair inference that it could have been produced by any other cause than negligence. If there is any other cause apparent to which the injury may with equal fairness be attributed, the inference of negligence cannot be drawn'." The court goes on to point out that "In the present case we have two apparent causes suggested; the one giving rise to the inference of negligence, the other negativing it." The test is then stated in the question, "'Can the [damaging effect] be attributed with equal fairness to either?" A few sentences later this is explained, in that inequality exists because, " * * * the suggestion of the defendant encounters improbabilities which, if they do not make it unreasonable make it much less credible than that of the plaintiff." The court concluded that under those circumstances it was "sufficient to warrant an inference of negligence; and, that being so, submission of the question to the jury followed necessarily."

[2] Housley, on the stand, denied having made them.

We do not agree with defendant's argument that those statements were inadmissible because they are opinion only; we think they are statements of fact.

 Were they properly admitted? It has been held in Pennsylvania that non-contractual admissions made by one who is an agent must have been part of the res gestae to be competent evidence against the employer.[3] Were these statements part of the res gestae?[4] The learned district judge sustained their admission on this ground. The plaintiff says this is right; at the time the statements were made the escaping water was still dripping, so the "thing done" was still in the process of doing. This sounds very well if one says it fast. But it goes a long way from the reason back of the rule allowing spontaneous exclamations as an exception to the Hearsay Rule. Wigmore thus states the principle (6 Wigmore on Evidence, 3rd Ed., § 1747(1)): "This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock."

 Granted that the exact factual situation described in this language is not required to make spontaneous utterances admissible, it is clear that in this case the facts are so very far away from it that the limit of applicability of the rule has been long since passed. Nor do we find anything in Pennsylvania decisions which lends support to an argument for admissibility.[5]

 But we think the defendant waived this objection. In cross-examination of the plaintiff's witness A. A. Fogley, the defendant asked for the statement made by Housley to the witness. When Housley was called by defendant he was asked in direct examination if he had made the

3 See McGrath v. Pennsylvania Sugar Co., 1924, 282 Pa. 265, 274, 127 A. 780; Oil City Fuel Co. v. Boundy, 1888, 122 Pa. 449, 15 A. 865. See also Restatement, Agency § 286.

4 What many courts have termed the res gestae rule seems on closer analysis to be simply the hearsay exception for spontaneous exclamations. (6 Wigmore on Evidence, 3rd Ed., § 1768): "A frequent application of the phrase [res gestae] has been to the Hearsay Exception for Spontaneous Exclamations * * * ." "[the latter doctrine's] application has almost invariably been made in terms of 'res gestae'. But this does not mean that there is any anomalous doctrine which must be recognized by that name." Again in § 1757, Wigmore speaks of the " * * * Hearsay Exception of Spontaneous Exclamations, more or less tainted by spurious phraseology and ideas from the 'res gestae' doctrine." However, we have no quarrel with the content of these res gestae cases. They state the settled law which we are following.

5 In addition to the McGrath case, note 3, there are a host of decisions in which the Pennsylvania courts have ruled on the problem. Declarations made in conversation immediately after an accident have been ruled out, McCullough v. Transit Co., 1907, 16 Pa.Dist. 513; so also have declarations by the car motorman just after the injured person was removed, Oster v. Schuylkill Traction Co., 1900, 195 Pa. 320, 324, 45 A. 1006;

also declarations of a driver after injured person had returned from having wounds dressed, Quigley v. Adams Express Co., 1904, 27 Pa.Super. 116, 118; still again, declarations of a truck driver 1½ hours after collision, McCaulif v. Griffith, 1933, 110 Pa.Super. 522, 530, 168 A. 536; and declarations a day later by employee, Milwaukee Mfg. Co. v. Point Marion Co., 1928, 294 Pa. 238, 241, 144 A. 100, or two days later by defendant's superintendent, Garrett v. Hillside Coal Co., 1883, 4 Walk., Pa., 451, 452, have also been excluded.

On the other hand declarations made while the injured person's clothes were in flames, Elkins v. McKean, 1875, 79 Pa. 493, 501; declarations by defendant's employees while the fire was still burning, Shafer v. Lacock, 1895, 168 Pa. 497, 502, 32 A. 44, 29 L.R.A. 254; declarations by injured person before he had gotten up, Pennsylvania R. v. Lyons, 1889, 129 Pa. 113, 121, 18 A. 759, 15 Am.St. Rep. 701; declarations by defendant's employees while the injured person still lay on track, Coll v. Transit Co., 1897, 180 Pa. 618, 625, 37 A. 89; declarations 20 or 25 minutes after injury, Broad Street Trust Co. v. Heyl Bros., 1937, 128 Pa.Super. 65, 70, 193 A. 397; Rodgers v. Woodcock Val. Telephone Co., 1927, 92 Pa.Super. 445, 447; declarations some time after injury but to the first person injured met, Smith v. Stoner, 1914, 243 Pa. 57, 63, 89 A. 795; Tomczak v. Susquehanna Coal Co., 1915, 250 Pa. 325, 95 A. 465; Guyer v. Equitable

statement attributed to him. Objection to competency is lost if the objecting party himself offers the same testimony as evidence.[6]

■ The defendant complains that improper items of damage were included. The verdict was for $2300. As to items amounting to $1723.50 we find no difficulty. These comprise outlay for wages, cloth, sewing, thread, machine parts, labor and so on. There was a point made about an item for finished or partly finished trousers which plaintiff cut up to make trouser loops to replace those damaged by water. This is recoverable within the established rule concerning avoidable consequences. Other material was not available; the loops had to be supplied and the plaintiff got the material where he could find it.

■ The plaintiff also claimed $1771.-83 for what he called "disruption of production," but which the defendant says is a claim for future profits with a different name used. Plaintiff does not claim that he is entitled to recover profits. He was not kept out of his premises and the items already mentioned include the cost of cleaning up the factory and replacing or repairing damaged goods. The plaintiff's witness, A. A. Fogley said by the phrase disruption of production he meant that but for the water damage twice as many trousers would have been turned out in the same period by the same number of employes working the same hours. If this does not sound in terms of loss of profits, it is something else equally speculative. We think the pecuniary loss shown was limited to the items above mentioned amounting to $1723.50.

The judgment is reversed and a new trial ordered unless the plaintiff within 30 days files a remittitur consenting to the reduction of the judgment to the sum of $1723.50.

---

Gas Co., 1924, 279 Pa. 5, 6, 123 A. 590: have all been admitted.

The facts of the instant case, where the water had been turned off some hours before the alleged declarations were made allign themselves in much closer conformity with the circumstantial pattern of the excluded declarations. For a more inclusive list of cases in both groups see note 73 in Henry, Pennsylvania Trial Evidence (3rd ed.) 424.

[6] 1 Wigmore on Evidence, 3rd Ed. 344, 345 § 18(D) Waiver of Objection: "Another instance is the curing of an error of admission by the opponent's *subsequent use of evidence similar* to that already objected to (except where this was done merely in self-defense, to explain or rebut the original evidence)." 6 Jones Commentaries on Evidence, 2d Ed., 4994 § 2524 Waiver of Objections: "Where the objection is not to the form or nature of the particular evidence, but to the substance or subject-matter, the objecting party may also waive objection by himself introducing evidence of the facts objected to, or by suffering the particular subject to be opened up without objection."

The numerous state cases and less frequent federal decisions cited in support of the rule do not express it with the same succinctness as the commentators have. Whether particular circumstances fit the rule or its exception is often difficult to determine from the record. In the instant case, not only was Housley asked whether he had made the statement to the admission of which the same counsel had previously objected, but Fogley was also questioned concerning the statement Housley had made. That fact, we feel, is of sufficient weight to bring the Housley statement in on the ground of waiver of objection by use of subsequent evidence of the same nature.

This Court in Franklin v. United States, 1912, 193 F. 334, ruled that where the trial court permitted handwriting testimony (subsequently admissible in Pennsylvania) over objection, the conduct of the objectors with respect to the same type of evidence cured the defect of admission. In a more recent case, the Second Circuit in United States v. Gruber, 1941, 123 F.2d 307, 310, said with respect to objections to questions put to character witnesses concerning a "report that the appellant had been charged with receiving a bribe" that "the error, if any, was cured by appellant's own testimony." Cf. Salt Lake City v. Smith, 8 Cir., 1940, 104 F. 457, a leading case for the exception to the rule.