**INTERNATIONAL DERRICK & EQUIPMENT CO.**

v.

**BUXBAUM.**

**No. 11153.**

United States Court of Appeals Third Circuit.

Argued Dec. 10, 1953.

Decided Feb. 11, 1954.

Harrison G. Kildare, Philadelphia, Pa. (Rawle & Henderson, Philadelphia, Pa., Joseph W. Henderson, Philadelphia, Pa., on the brief), for appellant.

Alexander F. Barbieri, Philadelphia, Pa., for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

This is an appeal by the plaintiff, International Derrick & Equipment Company, from a Judgment [1] of the United States District Court for the Eastern District of Pennsylvania in favor of the defendant, Henry R. Buxbaum.[2] Jurisdiction was based upon diversity of citizenship and a claim in excess of $3,000. The facts are as follows:

Plaintiff, a manufacturer of broadcasting towers, contracted with Mercer Broadcasting Company to erect a metal tower for broadcasting purposes on the premises of Station WTOA in Trenton, New Jersey, and to mount an antenna mast, manufactured by the General Electric Company, to the top of the tower. The tower when completed was 265 feet in height, and the antenna mast which was to be raised to its top was 65 feet in length, and weighed approximately 2,000 pounds. Plaintiff contracted with the defendant, who was engaged in the business of erecting broadcasting antenna masts, to perform that function.

On April 15, 1948, defendant and his employees prepared to lift the antenna mast to a vertical position above the tower. They attached their gin pole to the top of the supporting tower. This pole was constructed of tubular steel in four sections fitted together to form a vertical support. It was approximately sixty feet long when assembled, and projected twenty-six to twenty-eight feet above the top of the base tower. At the top of the gin pole there was a pad-eye on one side to which were secured four wire cable guys extending to the ground on all four sides of the tower. Opposite to this pad-eye, there was another pad-eye which held the snatch block for the lifting cable. The lifting cable was secured at one end to the antenna mast and at the other end to a truck winch which was part of defendant's equipment. When the cable had been attached to the mast to the satisfaction of defendant from the standpoint of the lifting, and to the satisfaction of the broadcasting company's engineer from the standpoint of the protection of the antenna elements from possible damage from the cable, defendant directed that a short lift or strain be taken on the winch. This raised the upper end of the mast several feet off the supports where it had been resting. At this time the gin pole bent over as much as five feet. Defendant then directed his employees to lift the lower end of the mast so that it could be moved to another position with reference to the foot of the tower.

1. On March 19, 1953, Judgment was entered in favor of defendant pursuant to an Order of the District Court. Following re-argument, the District Court by order dated July 17, 1953 (filed July 20, 1953), affirmed its prior Judgment entered in favor of defendant on March 19, 1953.

2. International Derrick & Equipment Co. v. Buxbaum, D.C.E.D.Pa.1953, 110 F. Supp. 951.

Thereafter, the winchman was ordered to take another strain on the lifting cable. While the winch was making this second lift, and the upper end of the antenna mast was fifteen to twenty feet off the ground, the gin pole bent over and kept on bending, causing the mast to fall to the ground, with a part of the mast resting on the bed of the winch truck.

Inspection of the guy wires and lifting cable after the accident disclosed that none of the defendant's lifting equipment had broken or become damaged except the metal gin pole, which remained bent over some forty-five to ninety degrees out of vertical. Examination of the damaged antenna mast by the engineers of the broadcasting company and representatives of the manufacturer revealed that it was damaged beyond repair and was only fit for salvage. Therefore, it was returned to the manufacturer for salvage, and a new mast of the same type was delivered to the broadcasting company.

The cost of returning the damaged mast, obtaining a new one, and delivering it to the broadcasting company, less due credit for salvage, amounted to the sum of $4,365.48. Plaintiff, as general contractor, has paid this sum to the manufacturer, and now seeks to recover this amount from the defendant upon the theory that the loss was due to his negligence and that of his employees.

The case was tried to the Court without a jury. At the trial, plaintiff called as an expert Mr. F. J. Atkinson, who testified that the lifting operation was negligently performed by the defendant in several material respects. Nevertheless, the District Court found as a fact and concluded as a matter of law that "The plaintiff failed to meet its burden of proof to establish that the plaintiff was damaged through negligence on the part of the defendant * * *." [110 F.Supp. 955.] Accordingly, judgment was entered in favor of the defendant, and upon reargument the judgment was affirmed.

It is contended on this appeal that the District Court erred in not availing to the plaintiff the benefit of certain inferences and presumptions arising from the evidence. However, before this question can be considered, a conflict of laws problem as to what law governs in this regard, must be resolved. Since Klaxon Co. v. Stentor Electric Manufacturing Co., Inc., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, it is clear that in diversity of citizenship cases the Federal courts must follow the conflict of laws rules prevailing in the States in which they sit. The rule in Pennsylvania is that the law of the forum controls all questions as to burden of proof, sufficiency of the evidence, and the inferences to be drawn therefrom. Foley v. The Pittsburgh-Des Moines Co., 1949, 363 Pa. 1, 68 A.2d 517. Accordingly, Pennsylvania law must be applied in answering this contention of the plaintiff.

It is manifest from a reading of the District Court's opinion that it failed to take into account the inference of negligence permissible under the Pennsylvania doctrine of "exclusive control". As Mr. Justice Jones, speaking for the Supreme Court of Pennsylvania, said in Commonwealth v. Montour Transport Co., 1950, 365 Pa. 72, 73 A.2d 659, 660:

> "It is, of course, hornbook that negligence is not to be presumed from the mere happening of an accident. * * * But that does not mean that negligence must be proven by direct evidence. * * * it may be established by proof that the instrumentality causing the injury was within the exclusive management and control of the defendant and the accident such as would not have happened in the ordinary course of events without negligence."

To the same effect are Shafer v. Lacock, 1895, 168 Pa. 497, 32 A. 44; Durning v. Hyman, 1926, 286 Pa. 376, 133 A. 568, 53 A.L.R. 851; Loch v. Confair, 1953, 372 Pa. 212, 93 A.2d 451; Trouser Corp.

of America v. Goodman and Theise, Inc., 3 Cir., 1946, 153 F.2d 284.

That the defendant had exclusive control as to the choice of equipment and its use, the timing, and the various details incident to the actual erection of the antenna mast is shown by undisputed testimony. McCarthy, manager of Radio Station WTOA, testified that, although he and his chief engineer were present at the time of the raising of the mast, neither took any part in the actual supervision of the lifting operation.

■ The inquiry remaining, therefore, is whether the accident was such as in the ordinary course of things does not happen if proper care is exercised. The decided cases compel an affirmative answer to this question. Thus, in the leading case of Shafer v. Lacock, supra, plaintiff's house was damaged by a fire caused by sparks falling from a fire bucket which was taken on plaintiff's roof by defendant's employees who were repairing it. Although there was an absence of proof as to what caused the sparks to fall, an inference that the defendant's employees were negligent was permitted. Negligence was also inferred in the following cases. In Bashore v. Publix Shirt Corp., 1952, 370 Pa. 142, 87 A.2d 468, defendant's vehicle left the highway, travelled a distance of ninety-seven feet, ran into a parked car, and then crashed into plaintiff's building. In Hauer v. Erie County Electric Co., 1912, 51 Pa.Super. 613, defendant's employees were engaged in removing a transformer from a pole about fifteen feet from the plaintiff's window. For some unknown reason the transformer fell to the pavement, breaking into pieces, and shattering the plaintiff's plate glass window. In Trouser Corp. of America v. Goodman and Theise, Inc., supra, plaintiff and defendant had their businesses on the second and third floor respectively in the same building and water which escaped from one of defendant's filters leaked through the ceiling to the damage of the plaintiff.

■ Accordingly, the District Court erred when it failed to take into account the permissible inference of negligence afforded by the facts at bar. Had it considered this inference of negligence in conjunction with the testimony of the plaintiff's expert witness, Atkinson, it might well have concluded that there was negligence on the part of the defendant.

■ There is some argument by the defendant that Atkinson did not properly qualify as an expert. However, it is clear from the testimony that the court below did not err in this respect. Atkinson testified that he had erected the antenna on top of William Penn's hat in City Hall in Philadelphia; erected the first television mast in Presque Isle, Maine; and had erected thousands of masts similar to the one involved in the instant case. He also testified that he had used steel gin poles, as well as wooden ones. This was sufficient to justify the admission of his testimony. Moodie v. Westinghouse Electric Co., 1951, 367 Pa. 493, 80 A.2d 734.

For the reasons stated the Judgment of the District Court will be reversed and the cause remanded with instructions to the District Court to proceed in accordance with this Opinion.