## CITY OF PHILADELPHIA v. S. C. LOVELAND CO., Inc.

Civ. No. 7018.

United States District Court
E. D. Pennsylvania.

July 12, 1948.

G. Coe Farrier, of Somerton, Pa., and Howard M. Long and Howard T. Long, both of Philadelphia, Pa., for plaintiff.

Clark, Brown, McGown, Fortenbaugh & Young, of Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This is a civil action brought by the City of Philadelphia to recover for damage to four bridges occasioned at various times by the collision with the bridge structures of barges being towed by the defendant's tugboat, the William J. Scott.

The plaintiff relies on the principle of law that when a vessel comes into collision with a stationary object an in-

ference of negligence arises, and it is the duty of the vessel to explain away that inference. The Clarence P. Howland, 2 Cir., 16 F.2d 25; The Louisiana, 3 Wall 164, 18 L.Ed. 85; The Marian, 9 Cir., 66 F.2d 354. The principle of law is applicable to all the causes of action, and in all except the third, compels a finding of negligence on the part of the defendant.

The first cause of action is for damage to the University Avenue Bridge on July 24, 1945, when the defendant's tug towed a barge in such a manner that it came into collision with the plaintiff's bridge and damaged it to the extent of $424.28. The defendant has offered no satisfactory explanation for this collision and I find that the damage was caused by the negligence of the defendant and award the sum of $424.28 to the plaintiff.

The second cause of action is for damage caused July 20, 1945, to the South Street Bridge when a barge towed by the Scott came into collision with the bridge structure and damaged it to the extent of $900. The defendant's captain testified that he was close to the edge of the channel and the tide did not take effect on his tow as soon as he thought it would. Therefore, he was unable to avoid hitting the bridge. However, a miscalculation of this kind is negligent navigation. I think that the captain should have known how the tide would affect the tug and tow and that he was at fault in allowing it to come into collision with the bridge. I award damages in the sum of $900.

The third cause of action is for damage to the Grays Ferry Avenue Bridge. At about 11:30 a. m., September 12, 1945, the Scott with a barge loaded with ashes in tow astern was moving down the Schuylkill River in a southerly direction close to the western side of the channel and approaching the Grays Ferry Avenue Bridge. The day was clear, there was no wind and the tide was near low and ebbing. The tug and barge together made a flotilla approximately 200 feet in length. The channel, though 200 feet wide on paper, was, as a matter of fact, navigable to the Scott and its tow to a width of not more than 100 feet. The intention of the Scott was to pass through the western draw of the bridge (the eastern draw being impassable at low water) which was about 75 feet wide and was protected by a pile cluster on the western side and the abutment of the pier extending some 50 feet upstream on the eastern side.

When the Scott reached a point about 900 feet above the bridge Captain Mohan who was navigating her observed a tug in the draw coming upstream. This was the Rose, which was towing two barges in tandem astern, the entire length of that flotilla being approximately 400 feet. Captain Mohan immediately reversed his engine and, having checked the speed of the tug, proceeded slowly forward (not over one and one-half miles per hour) and "just worked enough back and forth to keep the tug straight." He took this action because he assumed, with entire justification, that the Rose would continue upstream and that she and her tow would be well out of his way by the time he was in position to enter the draw. Unfortunately, when the rear barge of the Rose's tow had just passed the upstream end of the abutment, the leading barge ran aground and the flotilla stopped, the tug swinging slightly to the east, with the result that the rear barge obstructed possibly two-fifths of the deepwater approach to the draw. This left the Scott less than 60 feet of navigable water upon which to enter the draw.

The position of the stranded flotilla and the Scott's own position on the extreme west side of the channel, made it impossible for the latter to go through the draw except at an angle—a maneuver which admittedly involved a very considerable risk of collision with the bridge. The situation was fully realized by Captain Mohan, but it was too late for him to turn around in the narrow channel without even greater risk of colliding with the Rose, and he had no practicable course except to try to go through the draw. It would have been futile and probably dangerous to have dropped anchor because the only anchor he had was on the tug, the bottom was soft silt and even if the tug had stopped—a matter which was problematical—there was great danger that the barge would have swung around and collided with the Rose or one of her barges. His only other

possible course was to run his flotilla aground on the west bank of the channel. This probably would not have damaged any of his vessels but there was still the likelihood that any one of them would swing out into the channel and come into collision with the other flotilla. The Scott was about 60 feet long and its barge 115 feet and the latter, even if it as well as the tug were grounded, could have hit the stranded flotilla if it had swung crosswise into the channel. Confronted as he was with an emergency, I cannot convict Captain Mohan of negligence in attempting a maneuver which offered at least a possibility of getting safely through the draw.

The cases cited by the plaintiff, to the general effect that when a moving vessel strikes a stationary object an inference of negligence arises, are all in point, but the presumption is not conclusive and when the facts appear fully the Court is justified in drawing a contrary conclusion. In the present case, had there been no emergency there would be little doubt that the defendant would be liable for the damage done to the bridge, but the whole issue must be determined in the light of the fact that the upcoming flotilla unexpectedly stopped and created a situation which called for an immediate choice between a number of courses none of which were without danger. In such a case the only question is whether the course adopted was plainly so much more dangerous than any other that the master of the vessel should be found negligent. I do not think that it was in the present case and, of course, in a situation where there was danger in anything which he might do the mere fact that a collision resulted from the course he chose is of itself no evidence of negligence. There is no satisfactory evidence that if he had grounded or had attempted to drop anchor a collision would not have occurred and a good deal more damage occasioned than actually was.

Upon the third cause of action I find for the defendant.

The fourth cause of action is for damage to the Penrose Ferry Bridge. This collision occurred because a tow rope, which was negligently rigged in such a manner that it was cut by chafing on the barge, broke. This was clearly due to the defendant's negligence. The plaintiff produced evidence that one timber was damaged and that it took one day to replace it but did not produce any evidence as to the cost of the repairs and there is nothing upon which the Court can fix the damages. Judgment on this cause of action must therefore be for the defendant.