## Sofis v. Charles Zubik Sons, Inc.

Before McKay and McCreary, JJ., specially presiding.

*Hamilton A. Robinson*, for plaintiff.

*John F. Healy*, for defendant.

McKay, J., specially presiding, September 8, 1958. —In this action of trespass, defendant has moved for judgment n. o. v. and for a new trial following a verdict in favor of plaintiff.

The action was brought to recover damages for the destruction of personal property of plaintiff on April

12, 1956, when the smoke stacks of a tug boat owned by defendant and operated by its employes on the Allegheny River came into contact with cables and scaffolding erected by plaintiff on the under side of the Seventh Street Bridge in the city of Pittsburgh. The point of contact was under the southern span of the bridge immediately south of the south pier, about 175 feet north of the south shore of the river.

Defendant counterclaimed for the damage done to its boat in the collision.

Plaintiff, a contractor, was engaged in painting the bridge under a contract with Allegheny County. In order for it to paint the bottom of the bridge it had stretched five parallel cables under it from the center of the river to the wall at the south shore. Upon the cables, it had fastened platforms upon which its employes stood while doing their work.

Before installing the rigging and scaffolds, plaintiff had obtained permission from the United States Army Engineers at Pittsburgh, as was necesary since the Allegheny, being a navigable stream, is under the control of the War Department. A condition of the granting of permision was that the cables should not extend more than three feet below the bridge, so as not to impede unduly boat traffic under the bridge. In fact, the rigging was but one foot lower than the lowest point of the bridge, the bottom of the beams. The clearance under the cables at the point where the accident occurred to the water below was approximately 25 feet. Under the center of the bridge, which is 500 feet north of the south shore, the clearance was much greater, being about 45 feet. At this portion of the river is the channel which river traffic normally uses going up and down stream.

Extending east and west of the bridge along the south shore were wharves where river boats could tie up. About 100 feet east of the bridge, a river salvage

operator named Raymond Flemm had a derrick boat and three barges tied at the wharf, one barge being east, one west and one north of the boat. The north edge of the last barge, tied alongside the boat, was 60 feet north of the south shore. About one tenth of a mile east of the Seventh Street Bridge was the Ninth Street Bridge. The river level was "at pool", or normal. The current was westwardly at about four or five miles per hour.

At about 2 p.m., while plaintiff's employes were engaged in their work on the scaffolds, defendant's tug boat, "The M. V. Benwood", with two barges tied to its bow and one to its side, drifted stern first downstream with the current from a point east of the Ninth Street Bridge. It was out of control and its paddle wheel was not moving. After it passed under the Ninth Street Bridge, it sounded a distress signal, whereupon a small shifter boat, "The Captain Bittner", also owned by defendant, which was nearby, came to its aid. The Bittner tied a rope to the barge at the side of the Benbow and by intermittently pushing against it and backing up and drawing on the tie rope, guided the Benbow downstream. Nothwithstanding the engineer was on duty in the engine room, the power of the Benbow was not used.

Thus aided by the Bittner, the Benbow avoided the southern pier of the bridge. As it passed within 30 feet of the outside Flemm barge, Flemm thought that one of defendant's employes on the bow of the barge at the head of the tow of the Benwood would throw a line to his tow, but he did not do so.

As the Benwood drifted under the Seventh Street Bridge, the upper portion of her smoke stacks struck plaintiff's rigging, breaking the cables and throwing the scaffolds and paint into the river. The painters climbed to the understructure of the bridge and escaped injury.

On the day following the accident, before plaintiff removed the broken cables from the center of the bridge at the channel, where they hung down into the river, a vessel owned by a third party struck the cables and sustained damages which plaintiff paid and included in its claim in the present suit.

Defendant's testimony was to the effect that while the Benwood was proceeding southwardly across the river upstream of the Ninth Street Bridge, with its tow of barges, its rudders were jammed while in a turned position by a sunken log; that as a result it was impossible to steer it even with the emergency steering apparatus, that the Bittner, which responded to the Benwood's distress signal, had sufficient power to exert a slight steering effect but not enough to force the Benwood and its tow to the south shore, that the captain of the Benwood was under the impression that his boat, having successfully cleared the Ninth Street Bridge, could also clear the Seventh Street Bridge until he noticed the rigging under the latter bridge when the boat was about 100 feet east of the bridge and that there was nothing he could do to avert the collision.

At the close of the trial defendant submitted a written point for binding instruction, which was refused. The court submitted the question of defendant's negligence to the jury and, at defendant's suggestion, also explained defendant's duty where confronted with sudden emergency.

The court further charged the jury that if they found from the evidence that the Benwood came down the river out of control and backwards, the burden of proof which rested generally upon plaintiff was shifted to defendant to go forward with evidence and explain why the boat was so proceeding, and that defendant thereupon had the burden to explain to the jury's satisfaction that it was not guilty of negligence in so

operating the boat. At the close of the charge the court, at the request of defendant, again stated that while plaintiff has the over-all burden of proof which never shifts, when it is shown that a moving object under the control of defendant collided with a stationary object under the control of plaintiff under such circumstances that the collision would not ordinarily happen except for negligence on the part of defendant who had control of the moving cause, the burden of going forward with the evidence and freeing himself from negligence is shifted to defendant.

The court also instructed the jury that, in determining whether defendant was negligent, they could consider whether, even if a log had jammed the Benbow's rudder, other steps could have been taken by defendant's employes which would have averted the collision. It mentioned as possibilities using the Benbow's own power to supplement that of the Bittner, deflecting the Benbow closer to the Flemm barge and tying on to it, or pulling the Benbow out into the channel where the clearance was greater.

The jury returned a verdict for plaintiff in the amount of $2,142.84 and a verdict also for plaintiff on defendant's counterclaim.

In support of the pending motions, defendant contends, primarily, that judgment n. o. v. should be granted for the reason that there was no evidence of negligence on its part. Alternately, it asks for a new trial on the ground that the court erred in charging as to the burden of proof and in calling the jury's attention to matters not in evidence, viz., that defendant could have avoided the collision by taking the steps mentioned above.

## I. Judgment N. O. V.

It must be conceded that plaintiff did not produce direct evidence of any negligent act on the part of defendant that caused the Benwood to go out of control.

Plaintiff contends, however, that the facts and circumstances attendant upon the accident, as proved by plaintiff, were such as to cast the burden of going forward with the evidence upon defendant itself to prove that it had exercised due care to prevent the happening of the accident. In short, defendant relies upon the doctrine known as "exclusive control", and contends that it applies to the instant case.

The rule of exclusive control was originally stated by Erle, C. J., in the case of Scott v. London & St. Katherine Docks Co., 3 H. & C. 596, 159 Eng. Rep. 665, as follows:

". . . where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care."

The leading case of the doctrine in Pennsylvania is Shafer v. Lacock, Hawthorne & Co., 168 Pa. 497, which states the rule substantially, as above, quoting Sherman and Redfield on Negligence, secs. 59 and 60, as follows:

"The accident, the injury and the circumstances under which they occurred are in some cases sufficient to raise a presumption of negligence and thus cast on the defendant the burden of establishing his freedom from fault. When the thing which causes the injury is shown to be under the management of the defendants and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from a want of care."

In the Shafer case defendant's employes had under-

taken to repair plaintiff's roof and in so doing the workmen had used a firepot. The sparks from it ignited the roof and destroyed the building. The trial court charged that the fair presumption was that if the fire caught from sparks defendant was negligent and that it was for defendant to explain how it occurred without him being negligent. The Supreme Court affirmed the judgment, stating, page 503:

"There are cases in which a fair presumption or inference of negligence arises from the circumstances under which the injury occurred, and this we think is one of them. . . . The defendants by their servants were in exclusive possession of the roof and the destruction of the property was due to fire brought there by them, and under their control. The occurrence was not in the ordinary course of things and the circumstances connected with and surrounding it put on them the duty of showing that it was at least consistent with the exercise of proper care in the performance of their work. If it was capable of an explanation which repelled an inference that it resulted from their negligence, they could and ought to have made it because they were in a position to do so, while from the nature of the case it was not in the power of the plaintiff to show expressly in what manner their work was performed or the cause of the escape from the fire pot of the sparks by means of which his house was burned."

The exclusive control rule has been criticized by our appellate courts as being contrary to the general principles of negligence law and one that should be limited.[1] Further, in other cases which apparently call for the application of the rule, the courts have rested the liability of defendant upon circumstantial evidence of

[1] Logan v. Bethlehem City, 324 Pa. 7; Miller v. Hickey, 368 Pa. 317; Kotal v. Goldberg, 375 Pa. 397, concurring opinion by Mr. Justice Bell at page 420.

his negligence without resorting or ever referring to the rule.[2]

Nevertheless, the doctrine is firmly entrenched in our decisional law and has been recognized and applied consistently from 1895 when the Shafer case was decided to June 11, 1958, when the Superior Court decided the Ten-Ten Chestnut Street Corporation case by a unanimous opinion.[3]

It is to be noted that the rule "comes close to" but is distinguishable from the rule of res ipsa loquitur, the latter rule being limited to circumstances where there is a contractual relation between the parties, as a passenger on a public carrier or a customer of a public utility: Sierocinski v. E. I. DuPont de Nemours & Co., 118 F. 2d 531, 535.

Examples of the application of the rule are many: The giving way of the left side of a motion picture

---

[2] Dougherty v. Phila. Rapid Transit Co., 257 Pa. 118, where a detached trolley pole fell from defendant's street car and injured plaintiff; Gawronski v. McAdoo, 266 Pa. 449, where an eight-year-old child sitting on one of defendant's freight cars watching a ball game was injured when a runaway engine caused a train to strike the car; Dei v. Stratigos, 287 Pa. 475, where a workman on a scaffold was injured when a smokestack being raised by defendant's employes fell on him. The court said that where defendant was in control and the accident was as of the kind that does not ordinarily happen if care is exercised by defendant, but *slight evidence of negligence* is required; Lesick v. Proctor, 300 Pa. 347, where the court, Walling, J., made a similar statement in holding that there was sufficient circumstantial evidence of negligence where plaintiff was burned while under an electric hair dryer; Pope v. Reading Company, 304 Pa. 326, where plaintiff was struck by a loose piece of concrete which fell from defendant's wall; Goodpasture v. Simpson, 330 Pa. 225, where a block of wood fell from a truck in the path of plaintiff's car. It is also possible that the many cases where a defendant is held to be negligent on mere proof that he drove his car on the wrong side of the highway, such as Nixon v. Chiarilli, 385 Pa. 218, belong in this category.

[3] Ten Ten Chestnut Street Corporation v. Quaker State Coca-Cola Bottling Co., 186 Pa. Superior Ct. 585.

theatre seat when a child sat upon it (Durning v. Hyman, 286 Pa. 376); the presence of defendant's horse on a highway (Bender v. Welsh, 344 Pa. 392); the derailing of defendant's train when speeding around a turn while traveling down grade (Turek v. Pennsylvania Railroad Company, 361 Pa. 512); the falling of a bolt from the ceiling of defendant's motion picture house (Skeen v. Stanley Co. of America, 362 Pa. 174); the burning of defendant's tractor trailer and cargo of gasoline on the highway (Commonwealth v. Montour Transport Company, 365 Pa. 72); the exploding of a ginger ale bottle in a grocery store (Loch v. Confair, 372 Pa. 212); the escaping of live steam from defendant's water line, injuring a workman (Eckman v. Bethlehem Steel Company, 387 Pa. 437); the leaving the highway by defendant's automobile (Knox v. Simmerman, 301 Pa. 1; Maltz v. Carter, 311 Pa. 550; Kotal v. Goldberg, supra; Devereaux v. Caldin, 127 Pa. Superior Ct. 595; Morgan v. Peters, 148 Pa. Superior Ct. 88); the driving of defendant's team of horses into plaintiff's parked car (Latella v. Breyer Ice Cream Company, 87 Pa. Superior Ct. 325); the sudden collapse of a bed (Tamres v. Reed, 109 Pa. Superior Ct. 28); the sudden opening of defendant's taxicab door, injuring a pedestrian (Young v. Yellow Cab Company, 118 Pa. Superior Ct. 495); the breaking of a chain (Teets v. Crescent Portland Cement Company, 123 Pa. Superior Ct. 85); the passing of a current of electricity through an X-ray machine injuring one not a patient (Kelly v. Yount, 135 Pa. Superior Ct. 528); the exploding of a glass jar of coffee when touched by a customer at a grocery store (Dillon v. William S. Scull Co., 164 Pa. Superior Ct. 365); the falling of a coupler out of a freight train at a crossing (Mack v. Reading Company, 173 Pa. Superior Ct. 296); the presence of a foreign object in a pineapple pie in defendant's restaurant (Miller v. Meadville Food Service,

Inc., 173 Pa. Superior Ct. 357) ; the origin of a fire in a coca-cola machine controlled by defendant: Ten Ten Chestnut Street Corporation v. Quaker State Coca-Cola Bottling Co., supra.

Similarly the Federal courts in cases where Pennsylvania law is applicable have either recognized and applied the doctrine by name, as in Trouser Corporation of America v. Goodman & Theise, Inc., 153 F. 2d 284, where water leaked from a filter under the exclusive control of defendant; or, have applied to facts similar to those in the present case, viz., a moving vessel striking a stationary object, a rule substantially identical to the exclusive control rule, viz., that the collision constitutes prima facie evidence of negligence, as in Patterson Oil Terminals, Inc., v. The Port Covington, 205 F. 2d 694, where defendant's vessel collided with plaintiff's dolphin; or that an inference of negligence arises from the collision requiring defendant to explain the inference away, as in City of Philadelphia v. S. C. Loveland Co., Inc., 81 F. Supp. 585, where defendant's tug, towing a barge, damaged plaintiff's bridge.

It will be noted that the original conditions attached to the application of the exclusive control doctrine are that the thing that causes the accident must be under the exclusive control of defendant, and that the accident must be such as ordinarily does not happen if the one in control uses proper care.

To these conditions the courts have subsequently added other suggested limitations, namely, that the case be an exceptional one, that the evidence of the cause of the accident be exclusively, or at least peculiarly, accessible to and within the possession of defendant (Miller v. Hickey, supra,[4] Ten Ten Chestnut Street

---

[4] In the Miller case the court refused to apply the rule because the additional conditions were not met.

Corporation v. Quaker State Coca-Cola Bottling Co., supra), and that the general principles of negligence have not heretofore been applied to such facts: Concurring opinion by Mr. Justice Bell in Kotal v. Goldberg, supra, at page 420.[5]

Defendant contends that the exclusive control doctrine is not applicable to the present case. However, it is our opinion that the case at bar meets not only the conditions originally prescribed for the application of the doctrine, but also those which have subsequently been announced by the more recent decisions. The accident was certainly an exceptional one. It is indeed rare that a tug boat floats down a navigable river backwards outside of the channel under a low portion of a bridge and causes its smoke stacks to collide with scaffolding constructed under the floor of the bridge. Unquestionably, the boat was under the exclusive control of defendant's captain. The accident was one which would not ordinarily happen, if the pilot used due care, for carefully operated steamboats do not customarily ply a navigable river out of control. The evidence of the cause of the boat being out of control was exclusively within the possession of defendant's employes. They alone knew what had happened to the boat prior to the accident, why a line was not thrown to the Flemm barge, and why the Benbow's power was not used to assist in its control. Finally, the general principles of negligence have not heretofore been held to apply to a factual situation like that presented here.

Therefore, the present case comes squarely within the decisions calling for an application of the doctrine

---

[5] Mr. Justice Bell lists as examples of the proper application of the exclusive control doctrine the following cases which we have cited supra: Shafer v. Lacock; Durning v. Hyman; Skeen v. Stanley Co. of America; Loch v. Confair; Dillon v. William S. Scull Co., and particularly Commonwealth v. Montour Transport Company.

of exclusive control and the court was correct in submitting the case to the jury under that theory.

## II. Motions for a New Trial

A. The charge as to burden of proof:

Since the present case was subject to the application of the exclusive control doctrine, it follows that the portion of the charge bearing upon the burden of proof was correct, for it merely guided the jury in applying the doctrine to the case before it.

The court correctly stated in substance that the overall burden of proof was upon plaintiff to prove every fact necessary for it to recover, including negligence, but that if the jury found from the evidence that the boat came down the river out of control and backwards the burden was shifted to defendant to go forward with evidence and explain why the boat was so proceeding down the river, adding:

"The defendant thereupon had the burden to explain to your satisfaction that he was not guilty of negligence in so operating that boat."

If there was any ambiguity in this portion of the charge, it was removed when the court supplemented its charge with the words, "then the burden of going forward with the evidence and freeing himself of the negligence is shifted to the defendant".

That the above is the proper method of charging the jury in a case where the exclusive control doctrine is applicable, see Mack Reading Co., supra, at page 298. There the lower court charged the jury that the circumstances imposed the duty on defendant to establish freedom from fault and the Supreme Court affirmed the judgment. See also Dillon v. William S. Scull Co., supra, at page 369, where court said:

"Actually the whole doctrine,—and this is also true of res ipsa loquitur,—is but a rule of evidence which determines whose task it is to produce evidence, or, as

Professor Wigmore phrases it, 'who has the risk of non-persuasion.' "

Hence, the motion for new trial on the ground of error in charge as to burden of proof must be dismissed.

B. Directing the attention of the jury to matters not in evidence:

The second reason assigned for a new trial is that the court instructed the jury to consider certain matters which were not supported by the evidence.

In particular, it is contended that there was no evidence that defendant's employes, after the Benbow was incapacitated, could have diverted its course by any of the measures which the court suggested as possibly being available to them for that purpose.

Defendant's real objection is that there was no opinion evidence on this point. But, in our view, opinion evidence was not required.

The evidence of defendant itself showed that the Bittner undertook to guide the Benbow's course at least to some extent. It was successful in this, for a collision with the pier was thereby avoided.

There was also evidence that the Benbow passed within 30 feet of the Flemm barge 100 feet upstream of the bridge and that Flemm expected a tow line to be thrown from the Benbow as it passed. The clearance under the bridge increased toward the center where at the channel it was as high as 40 feet.

These established facts logically suggested all of the questions mentioned by the court. As we recall, the questions were discussed in the arguments of both counsel. Therefore it was proper for the court to mention them in its charge. The court also reviewed the defendant's position on each question, and left the answers entirely to the jury without any attempt to influence the jury in arriving at the correct answers. Hence, there was no error in the court's charge.

*Order*

Now, September 8, 1958, it is ordered that defendant's motions for judgment n. o. v. and for a new trial are overruled, and that judgment be entered upon payment of the verdict fee.

*Exception*

And now, September 8, 1958, to the foregoing order of the court, counsel for defendant excepts and, eo die, a bill of exceptions is sealed for defendant.